CALVIN MORGAN, Plaintiff in Error, v. JAMES M. MARTIEN, Defendant in Error.

*Surety.*—Although the contract into which the security has entered cannot be varied without his assent by any agreement between the creditor and principal debtor, yet the creditor may properly take additional securities from the principal, not changing the terms of but collateral to the original contract. Where, therefore, the defendant had become security upon notes given in consideration of lands sold to the principal, and the principal subsequently executed a deed of trust to secure payment of the same notes, which deed contained a proviso that in case of default for thirty days in the payment of any one of the notes, all the notes should become due and payable, and that the trustees might proceed to sell the lands and pay all of said notes, whether due on their face or not. *Held*, 1. That by the terms of the deed the notes became due only so far as to authorize a payment from the proceeds of sale, and that no suit could be prosecuted upon them until they matured. 2. That the taking of such deed of trust operated to the benefit of the security, and did not change the effect of his contract.

### Error to Callaway Circuit Court.

This suit was instituted in the Callaway Circuit Court against defendant in error, on a note, dated May 23, 1857, payable two years after date, for four hundred and fifty-two dollars and fifty cents, with interest from date till due at six per centum, and after due ten per centum. Defendant executed the note as security to Joseph G. Martien, as to whom the suit was dismissed for want of service of writ. Defendant, James M. Martien, put in an answer averring his release from all liability, upon the following statement of facts: That on the 23d day of May, 1857, Joseph G. Martien bought of William T. Christy and Calvin Morgan, owners in joint interest—the former three fourths and the latter one fourth—of about fifteen hundred acres of land in Audrain county, for about nineteen thousand dollars; nine thousand of it paid in hand, the balance on time, secured by promissory notes as follows: seven notes were given to Christy and seven to Morgan, embracing their respective interests in the unpaid purchase money. Joseph G. Martien, with defendant in error as his security, gave two notes to Morgan, one to be due in one year, and the other in two years, which latter note is the one

in suit, and like notes in time he gave to Christy, with the same security. The other ten notes, falling due at later periods, were given by Joseph G. Martien alone. On the 23d day of June, 1857, Christy and wife executed to Joseph G. Martien a deed in fee simple to his interest in the lands, which was acknowledged the 6th of July, 1857, and filed for record the 16th of July, 1857. That on the 23d of June, 1857, Morgan and wife executed to Joseph G. Martien a like deed, which was acknowledged the 1st of July, 1857, and recorded at the time of the other deed. That on the 23d of May, 1857, Joseph G. Martien and wife executed to certain trustees a deed of trust to said lands to secure the payment of said notes upon this condition: " If any one of said notes become due and remain for thirty days unpaid after due, then, by virtue of such default in the payment of any of the said notes, all the notes remaining unpaid shall forthwith become due and payable, as though due by the face thereof ; and if said notes or either of them shall become due by their tenor, or the provisions of this trust, and be unpaid, then this deed shall remain in full force," and the said trustees may proceed to sell, for cash in hand, on the terms and conditions as expressed in the deed of trust. This deed of trust was acknowledged 9th of June, 1857, and filed for record at the same date as the other deeds. Defendant in error, by his answer, claimed there was a change of contract to his prejudice and without his knowledge or consent ; denied any consent to the execution of the deed of trust, by which the contract embraced in the note sued on was changed, and desired to be released from all liability for the same.

The trial was had before a jury, whose verdict was for the defendant in error.

The evidence adduced tended to show that James M. Martien was present at negotiation of a sale of the lands by Morgan and Christy to his brother, Joseph G. Martien, and that he was cognizant of and assented to the giving and taking of the deed of trust.

*C. H. Hardin,* for plaintiff in error.

I. The object of the provision in the deed of trust making certain notes mature upon the contingency expressed, was to enable the trustees to sell the property upon the happening of such contingency. The provision effected no other purpose, nor did it contemplate any change or alteration of the contract as contained in the several notes themselves. It applied alone to the powers of the trustees, and not to the duration of the notes as notes. It provided for accelerated remedies against the specific property of the purchaser, and not for a disturbance of the particular contract as contained in the several notes. It neither extinguished nor suspended any remedy the plaintiff had on the note sued on, against either obligor. He could not have sued either obligor till the maturity of the note, as expressed by the note itself. If this be true, there was no variation of the note in the time of its maturity. Plaintiff could not, upon the supposed change and alteration of the rate of interest, as alleged to have been effected by the deed of trust, have recovered ten per cent. interest from the expiration of thirty days next succeeding the maturity of the first note, instead of interest according to the terms of the note sued on in this cause. If this be true, there was no variation of the note in the rate of interest. If, then, the plaintiff could not have sued on the note in this cause earlier than the date of its maturity as expressed in the note, nor recovered greater interest than as therein expressed, no alteration of the terms of the note was had, and no rights or remedies of the surety were prejudiced.

II. The deed of trust did not, though a specialty, extinguish or suspend any right of action the obligee had on the note, or the obligors thereof, nor any remedy or right accorded by law to the surety. There is not a covenant in it that will bear the construction that it does. On the contrary, it expressly acknowledges, by its reference to the existence of such notes, that plaintiff holds certain securities on the obligors separate and apart from it. The law provides for collateral security, a principle as firmly fixed as any.

Morgan v. Martien.

When taken, shall it be construed to have extinguished the original debt without an admitted agreement between the parties to that effect, or some well-defined act leading to this conclusion and none other ? The deed of trust does not stipulate to be, nor does it in law operate as, a satisfaction of the notes, nor does it disable plaintiff from suing on them any more than if it had not been taken. If it can be collected from the deed of trust that it was the intention of the parties thereto, that the notes should continue an existing security, and that the deed of trust should be a further, or collateral, security, the surety is not discharged. (Pittman on Principal and Surety, 200–3, and the authorities there cited ; Ireland v. Beresford, 6 Dow. 233 ; 2 Story on Cont., 428-9 ; Twopenny v. Young, 5 Dow. & Ry. 259 ; same case, 3 B. & C. 208 ; Emes v. Widdowson, 4 Car. & Payne, 151 ; Price v. Edmonds, 10. B. & C. 578 ; Hulme v. Coles, 2 Sim. 12 ; Gorden v. Calvert, 4 Rus. Ch. 581 ; 5 Howard, Miss., 631 ; 3 Binney, 520 ; 5 Barbour, S. Ct. 408–9 ; 11 Wend. 320–1.)

III. If these conclusions be correct, the court committed error in overruling plaintiff's demurrer, in its rulings as to giving and refusing instructions, and in not granting to plaintiff a new trial.

A new trial should have been granted, as the verdict is unsupported by any evidence at all. If the deed of trust varied the terms of the contract, it was with the entire consent of the defendant in error. He was an active party in, and listener to, the whole land transaction, which took several days to accomplish ; heard and joined in all the discussions ; read and handled all the papers, including the deed of trust, and signed a part of them ; and subsequently, after re-examining, at his own residence, the deed of trust as often as twice, he gave a written authority for the notes in which he was surety, the note in suit being one, to be given up to the proper owners. These facts allow but one conclusion, that defendant in error consented to all the stipulations in the deed of trust. (5 Robinson, 252–3 ; 1 La. An. R. 254.)

*Ansell*, for defendant in error.

I. The court did right in refusing to set aside the verdict and judgment in this cause, and in not granting a new trial on the motion of plaintiff, and in overruling said motion.

In Miller v. Stewart, Judge Story says: Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract; to the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound and no further. It is not sufficient that he may sustain no injury by a change in the contract, and that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal. (Miller v. Stewart, 9 Wheat. 680, 702; 5 Cond. R. 728.) The surety is discharged if, without his consent, the principal parties make a new agreement inconsistent with the terms of the original agreement, or if they agree to make any alteration either in the terms of the original agreement, or in the mode of performing them. (Theobold on Principal and Surety, p. 76, § 152.) In Writcher v. Hall, 5 B. & C., 269, Mr. Justice Bayley said: "The new agreement was binding only on those persons who were parties to it. If it had been intended to bind the surety by it, he should have been consulted—he had a right to insist upon a literal performance of the original bargain. If a new bargain was made, he had a right to exercise his judgment whether he would become a party to it." (5 B. & C. 269; Writcher v. Hall, Theobold, 76–7, § 152; 2 Madd. 221; Theobold 77, § 153; 3 Price, 214; Theobold, 78, § 155.)

The real and only question in this case is, whether the surety was, in point of fact, placed in a different situation by what had taken place on the arrangement between the principal and the obligee, and whether by such change of situa-

tion *he might have been prejudiced*—not whether he did in fact actually sustain any injury in consequence.

A creditor taking a surety is bound to notice the nature of his agreement, and to protect him. I am not at liberty, in such a case, to inquire whether any inconvenience did actually arise to the plaintiff in consequence of the agreement between Moore and sheriff; for if the plaintiff was discharged, *he was discharged at the time when the agreement was entered into between them.* (7 Price, 223 ; Theo. 79, § 155 ; 17 Johns. R. 384 ; 2 Johns. Chy. 554 ; 8 Pickering, 458, 130 ; 10 Johns. R. 180 ; 8 Bingham, 156 ; 2 B. & C. 61 ; 3 Bos. & Pul. 366 ; 3 Kent's Com. 124 ; Story's Eq. § 567, 638, 639 ; 8 Pickering, 500 ; 2 Johns. Chy. 554 ; 2 Story's Eq. 671, &c., § 1224, 1225, 1226, and notes at the bottom of pages 671 to 681, both inclusive.)

BAY, Judge, delivered the opinion of the court.

The only question presented by the record in this case is whether the acceptance by plaintiff of the deed of trust so changed, altered or modified the original contract as to release the surety.

The general rule of law as extracted from English authorities is, that any variation in the agreement to which the surety has subscribed, which is made without his knowledge or consent, and which may prejudice him, or which may amount to a substitution of a new agreement for a former agreement, will discharge the surety.

The rule is fully recognized by American authorities, and is thus stated by Story, in his work on Contracts, vol. 1, p. 428 : " The liability of a surety cannot be extended beyond the actual terms of his engagement. Whenever, therefore, he fairly assumes a liability, it may be extinguished by any act or omission of the guarantee which alters the terms of the contract, unless it be with his consent. Nor does it matter that such an alteration be for the benefit of the guarantor ; because he has a right to stand upon the very terms of his agreement."

Thus no principle is better settled than that if the creditor, without the consent of the surety, agree to give time to the principal debtor, the surety is thereby discharged; and the reason of this doctrine is obvious enough, for by giving time to the debtor, the remedy of the surety against the principal is postponed, and becomes more uncertain and precarious.

The right of the surety, therefore, to stand upon the terms of the original agreement is clear and undoubted. Now, the question to be determined in this case is, whether the deed of trust changes or alters the original contract, or whether it is a new and additional security, and therefore collateral, and in no sense affecting the rights of the parties in reference to the original contract. The deed bears even date with the note sued on, but was not executed until some time in June following. It conveys to the trustees of plaintiff and one William T. Christy, a large tract of land in Audrain county, to secure the payment of certain notes therein mentioned, including the note in controversy, and it provides that if any one of the notes shall become due and remain unpaid for thirty days, then all of said notes shall become due and payable, and the trustees, or the survivor or survivors of them, may proceed to sell the property therein conveyed at public auction, &c., and out of the proceeds of such sale shall pay said notes or either of them, whether by their face they become due or not. There is no clause or covenant in the deed from which it can be inferred that the parties intended that it should operate as an extinguishment of the original contract, or should in anywise enlarge or diminish the liability of either party to such original contract. On the contrary, it is manifest that the deed was merely collateral, and intended as an additional and further security. So far from affecting the rights or remedies of the surety, it enures to his benefit. The object of the provision in the deed making certain notes mature upon the contingency expressed, was to enable the trustees to sell the property upon such con-

tingency, and apply the proceeds, or so much thereof as might be necessary, to the liquidation of all the notes whether upon their face they had matured or not. It was to insure the prompt performance of the original contract, and not to change or alter it. It was to enable the trustees to apply the proceeds of the sale to the payment of the entire debt instead of a part. The notes could not, by the happening of such contingency, mature for general purposes, and hence the plaintiff could not have brought suit upon this note prior to its maturity, as expressed on its face. We are therefore disposed to regard the deed as merely collateral and furnishing new and additional security for the performance of the contract; and the doctrine is well recognized, that the taking of such additional security without agreeing to give time to the debtor, will not discharge the surety. (2 Story on Cont. 429; Pittman on Principal and Surety, 202–3; Emes v. Widdowson, 4 Car. & Payne, 151.)

Emes v. Widdowson was an action of assumpsit on two bills of exchange. The defendant conveyed certain property as security for sums of money then due, and also for all future demands. The assignment contained a power of sale, but not to be executed until after six months' notice. The notice had not been given, and the defence proceeded upon the ground that the personal remedy was suspended. Tindall, C. J., held, however, that the assignment could only be considered as collateral security, and that the personal remedy was not suspended, there being no clause in the deed to that effect. See also Gahr v. Niemcewicz, 11 Wendell, 322, and the authorities there cited.

The reason of the rule above referred to certainly does not exist in this case. The defendant has been deprived of no remedy against the principal, and the taking of the deed was greatly to his advantage. He cannot, therefore, claim a release upon any legal or equitable ground.

The judgment will be reversed and the cause remanded; the other judges concurring.