JOHNSON, C. J.
I. The error assigned is, that the courts below erred in rendering a judgment in favor of Bishop, on the facts stated in the petition, the first defense and the reply thereto.
These facts are that plaintiffs are the indorsees for value, and before due, of a joint negotiable note of husband and wife, of which fact they had knowledge, that several years before it became due, the husband abandoned and deserted the wife ; that when last heard from, he was believed to be in Cincinnati; but plaintiffs did not know, on the day the note matured, Jan- *120 nary 13, 1881, nor could they learn after diligent inquiry, where he was to be found nor where his residence or place of business was, and hence they were under no obligations to make demand on him.
The demand on the wife in Guernsey county, and her refusal to pay, and due notice thereof, is admitted, so the question is, was the indorser discharged by the failure to make demand on the husband 2
This question may be considered : first, as unaffected by the coverture of Nancy M. Wiley, that is, treating the note as the valid joint obligation of both makers, and second, as affected by such coverture, and therefore the valid obligation of the husband alone.
First. If this note be regarded as the valid obligation of both.
The general rule is, that in case of a joint note, when the makers are not partners, demand must be made upon both, to charge an indorser.
In this state, in Harris v. Clark, 10 Ohio, 5, it was .held that a demand on one of three joint and several makers, with notice, was sufficient. In this case no excuse was offered for a failure to make demand on'the other makers. Hitchcock, J., said:
“ If we were to hold a demand must be made upon all the makers, in order to charge the indorser, such decision would operate to discharge many, if not all, indorsers of notes of a character similar to the one now under consideration. It will be seen that the note is not payable at any particular place; if it were, a demand at the place would be sufficient. But as it is, a personal demand was necessary. Now, suppose the makers resided in different states, or in different and distant parts of the same state, how could demand be made of all, so as to charge an indorser ? It must be made on the day the note falls due, or, where days of grace are allowed, upon the last day of grace. Will it be said that demand can be made at different and distant places on the same day through the agency of letters of attorney ? 1 believe such a practice *121 lias not been beard of. At least, we have found nothing like it in the books.”
“But it is said that an indorser is to be considered in the light of security ; that his undertaking to pay- is only in the event of a failure of the maker ; and that although one of the makers may’- refuse, still another, if requested, might pay. There is force in this reasoning. When, however, it is considered that an indorser is immediately notified of the fact of non-payment, and that the object of this notice is that he may procure an indemnity from those whose note he has indorsed, it is not perceived that he is in any great danger of loss in consequence of a failure to make demand of all the makers. He can at once procure his indemnity, if it can be had, or he may himself pay off the note, and immediately proceed against the makers.”
If this be sound in a case of a joint and several note, where no excuse is offered for the failure of the holder to máke demand on all, a fortiori it must be so, when the holder, after diligent inquiry, cannot find one of the makers. • •
This note was dated at Zanesville, Ohio ; whether the makers then resided there does not appear. It had no place of payment. When due, the wife resided in Guernsey county. Several years before maturity, Wiley abandoned and deserted his wife. When the note became due, the plaintiffs did not know, nor after diligent inquiry could they learn his whereabouts or residence. It was impossible to present it to both makers on the same day. The admitted facts show due diligence, and when this is shown, in case of a note payable at no particular place, and when the maker has abandoned his residence and gone to parts unknown, it is a sufficient excuse for non-presentment to him. 1 Parsons on N. & B. 442, 448, note (d.)
Second. The fact that one of the makers was a married woman cannot vary this rule. If, as is claimed, the note was void as to her, still it was the note of the husband and the same rule would apply. The excuse for failure to make a personal demand on him is equally good whether it be regarded as his individual note or as a valid joint note.
*122 By the demand on the wife at her residence in Guernsey county, and notice to the indorser, the latter had all the benefit of such notice. The law merchant does not require impossibilities. All that it requires is due diligence to find the maker. The demurrer to the reply admits such diligence. The indorsement by Bishop implied that the makers were both competent to contract. It admitted the signature and capacity of Nancy M. Wiley to make the note. As against the indorser this is to be regarded as the valid joint note of both makers, and the fact that Mrs. Wiley was the wife of her co-maker, of which plaintiffs had knowledge, can make no difference as to the liability of the indorser to the indorsee. He stood as the drawer of a new bill.
II. This conclusion would reverse the judgment, unless the court below erred in sustaining a demurrer of plaintiff to the second and third defenses. If either of these was a bar to the action on this note! then this judgment for defendant should be affirmed, though for a different reason than was given by the court.
The second defense is, that this fifth note of the series, which, by its terms, fell due Janua/ry 13, 1881, became, in fact, due January 13, 1878, by reason of a stipulation contained in the mortgage made to secure the series, that if default be made in the payment of any of the prior notes, then all should fall due and the mortgage was “ to become absolute as to all of said notes remaining unpaid.”
The notes themselves are, on their face, subject to no such stipulation. They purport to be so many independent obligations, whose maturity depends on the terms therein stated, to wit, payable in one, two, three, four and five years. These notes are of themselves complete. 'They give no right of action thereon until after due. Por the general purj>oses for which negotiable paper is made, their effect must be determined by their expressed terms. They pass by indorsement before due to bona fide indorsees for value, independent of the mortgage, and the holder’s rights and remedies thereon are unaffected by the mortgage, unless he has notice of some valid defense thereto, arising out of the mortgage. If these *123 plaintiffs bad become holders of these notes without knowledge of the mortgage or without an assignment thereof to them, their equitable interest in the mortgage would have given them no right to sue at law on all the notes upon default as to one note. Having an equity merely in the mortgage this stipulation would not be a covenant in their favor, but only in favor of the mortgagee.
Thus a covenant in a mortgage to trustees to secure bondholders, that upon default to ¡>ay interest, the bonds shall become due, if not inserted in the bonds, can only be taken advantage of by the trustees for the foreclosure of the mortgage. Mallory v. West Shore R. R., 35 N. Y. Sup. Ct. 174.
The bona fide holder of these notes for value, acquired all the rights of indorsees, and could, at their election, sue at law. By taking an assignment of the mortgage made to secure them, they acquired a right in equity to foreclose according to its terms. It was therein stipulated that upon default in paying any note all should become due, “ and this mortgage is to become absolute as to all said notes remaining unpaid.” This clause is for the advantage of the mortgagee or his assignee. It should be construed with reference to the subject matter and its evident purpose, namely, to provide but for one suit in foreclosm’e. In thus limiting its purpose, we give it full force, without rendering null the express stipulations of the notes. The terms of each contract can stand without rendering the other nugatory. If this stipulation was contained in the notes as well as in the mortgage, then both could be enforced without either destroying the other, but if this stipulation in the mortgage varies the obligations of the notes, except for purposes of foreclosure and other equitable relief, then we defeat the obligation as expressed in the notes.
This cannot be a sound conclusion. In Noell v. Garnes, 68 Mo. 649, where this conclusion is reached, the court basis its judgment on the ground that instruments executed at the same time, with regard to the same transaction, are, in the eye of the law, one, and must be read and construed together as such. 2 Smith Lead. Gas. 259. This admitted principle is illustra *124 ted in many ways, and by numerous cases, but no where is it applied to nullify one contract, by another made at the same time, relating to the same transaction, where the stipulations of each relate to different things, and both can stand together, and each be applied to its proper subject-matter.
Thus in Morgan v. Martin, 32 Mo. 438, there was a deed of trust to secure certain notes. It contained a provision somewhat similar to the one at bar, and the question was as to the discharge of a surety. It was said the deed was merely collateral, and was not intended to operate as an extinguishment of the contract expressed in the notes, and did not enlarge or diminish the liabilities thereon. It is said, “ the notes could not, on the happening of such a contingency, mature for general purposes.”
An attempt is made in 68 Mo. to limit this principle to cases where the mortgage is given subsequently to the notes, but obviously this distinction does not rest upon sound reasoning. In this conflict between 32nd and 68th Mo. we think the former rests upon firmer ground
While it is true that all separate writings, made at the same time, and relating to the same transaction, are in the eye of the law as if embodied in one, yet it is not true, that when, in one contract, evidenced by a single paper, or in several, relating to the same transaction, containing stipulations relating to matters in their nature separate, either should be construed so as to extinguish the other. If the construction claimed for the mortgage be given, it would extinguish the terms of the notes. As well might the stipulations of the note extinguish those in the mortgage. The stipulation in the mortgage should be construed as providing a remedy on the mortgage, and that so far as foreclosure proceedings are concerned, the notes, for that purpose are due, but for general purposes, the obligations on the notes, are to be determined í>y their own expressed terms. In this way both contracts can stand and be fully enforced according to the manifest intention of the parties.
III. The third defense is, that after the second and third notes became due, and before the fourth and fifth matured, *125 the plaintiffs foreclosed on those then due, and sold the property, out of which they were paid, whereby all right of action on the fourth and fifth notes is gone.
This claim rests upon the idea that by reason of this clause in the mortgage, all the notes became due, and the several notes became one entire demand, and that this action to foreclose for part, was a bar to an action for the remaining part of this'single demand.
This assumes that all the notes became due for all purposes, as well as for the purposes of foreclosure merely. This demand became entire for the purposes of a remedy on the mortgage merely, and if this was a second proceeding to foreclose to pay the later notes, the point would perhaps be well taken, but as it is an action at law on the note, it is not.
Even if all the notes had been embraced in the foreclosure proceeding, and the property proved insufficient to pay all, it would be no bar to this action at law on the note.

Judgment reversed, the demurrer to plaintiffs reply is overruled and cause remanded for further proceedings.