Thomson, J.
This is a suit to quiet title. The complaint alleges that on the 15th day of October, 1889, the plaintiffs, David Fisher and Martha Fisher, made and delivered to the Globe Investment Company, of Boston, Massachusetts, their promissory note for f1,500, due October 1, 1894, but payable at the. option of the makers after three years from date, at the maturity of any interest coupon; that the payment of the note was secured by a deed of trust, executed by the plaintiffs, which conveyed to the defendant, Frost, as trustee, certain land of the plaintiffs; that afterwards, about December, 1887, the Globe Investment Company assigned the note by guaranty to the defendant Chaney; that the plaintiffs had no notice or knowledge of the transfer, but continued to deal with the Globe Investment Company as the owner and holder of the note; that this company, as the agent of Chaney, collected from the plaintiffs the interest notes as they fell due, and, at different times, the entire amount of the principal note; and that, notwithstanding the payment of the note, Chaney refused to deliver it up to them, or to release the *325 property from the deed of trust, but was proceeding to sell their land under and by virtue of the trust deed. The prayer was that the cloud upon the plaintiffs’ title be removed, the title quieted, the defendants decreed to surrender up the note, and release the land from the trust deed, and that they be enjoined from selling the land.
Chaney answered, alleging that on December 13,1889, the note was sold to him by the Globe Investment Company, and was transferred to him by indorsement; averring that no part of the principal sum had ever been paid to him, and denying that the Globe Investment Company was ever his agent for any purpose.
The following is a copy of the note in question:
“No. 25, 5700. 11500.00.
“ First Mortgage note Globe Investment Company.
“ Colorado Springs, Colo., October 15th, 1889.
“ On the first day of October, A. D. Eighteen hundred and ninety-four, without grace, for value received, we promise to pay to the order of the Globe Investment Company, at its office in Boston, Massachusetts, the sum of Fifteen hundred 00-100 dollars, in gold or its equivalent in United States money; with interest until maturity at the rate of seven per cent, per annum, payable semi-annually, according to the terms of ten coupons hereto attached. If said sum is not paid at maturity, the amount unpaid shall bear interest thereafter at the rate of twelve per cent, per annum payable semi-annually ; and if any interest remains unpaid after it bcomes due, the principal shall at once become due at the option of the holder without notice.
his
“David x Fisher.
“ Attest: mark
“ Witness to mark, Martha Fisher.
“ F. A. A. Williams.”
Across the face of the note, in red ink, are these words: “ Payable after three years, at the maturity of any interest *326 coupon.” The note was folded inward twice. On the back of one fold are the words, “ Pay to the order of ,” below which is this signature: “ Globe Investment Company, by J. Lowell Moore, treasurer.” On the other fold at the opposite end of the note appears the following:
“In consideration of value received the Globe Investment Company hereby guarantees the payment of each coupon hereto attached at maturity, and the payment of this principal note within two years after maturity, with interest after maturity at the rate of seven per cent, per annum, payable semi-annually, provided said Company shall have the right to purchase this note at any time by paying the holder hereof its face value and accrued interest at the date of payment; and the neglect or refusal of said holder to accept such payment and assign and deliver to said Company this note and the mortgage given to secure it, shall release said Company from all further liability hereon.
“ In witness whereof the said Globe Investment Company has caused its corporate seal to be hereto affixed, and this guaranty to be signed in its name and behalf by its treasurer, this thirteenth day of December, 1889.
“ [Seal.] Globe Investment Company,
“ By J. Lowell Moore, Treasurer.”
The following are the portions of the trust deed to which reference will be necessary in this discussion :
“ This indenture, made this 15th dajr of October, in the year of our Lord one thousand eight hundred and eighty-nine, between David Fisher and Martha Fisher his wife, of the County of Las Animas and State of Colorado, parties of the first part, and Walter C. Frost, trustee, of the county of El Paso and State of Colorado, party of the second part, witnesseth that Whereas, the said David Fisher and his wife, Martha Fisher, have executed one promissory note dated the fifteenth day of October, A. D. 1889, for the principal sum of Fifteen Hundred Dollars, payable to the order of the Globe Investment Company of Boston, Massachusetts, on the first *327 day of October, A. D. 1894, with interest thereon at the rate of seven per cent, per annum, payable semi-annually, on the first days of April and October as evidenced by ten interest notes of even date with said principal note; said principal note and said interest notes to bear interest from maturity until paid, at the rate of twelve per cent, per annum.
“ And whereas, the said parties of the first part are desirous of securing not only the prompt payment of said promissory note and of said interest notes, in whose hands soever the same may be, but also of effectually securing and indemnifying the said Globe Investment Company, its successors or assigns;
“ Now therefore, the said parties of the first part, in consideration of the premises and for the purpose aforesaid, and in the further consideration of one dollar to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said party of the second part, in trust, forever, all the lands and premises situated in the County of Las Animas and State of Colorado, known and described as follows, to-wit: * * *
“ In trust, nevertheless, that in case of default in the payment of said note, or any part thereof, or any interest thereon, according to the tenor and effect of said note and interest notes attached, or in case of non-payment of taxes, or neglect to procure or renew insurance, or in case of the breach of any of the covenants or agreements herein contained, then on the application of the legal holder of said note, to enter upon, possess, hold and enjoy the above granted premises, and either with or without such entry to sell the said premises, or any part thereof, as may be specified in the notice of such sale. * * *
“ And it shall be the duty of said trustee after making such sale to make, execute and deliver to the purchaser or purchasers thereat, good and sufficient deed or deeds of conveyance for the said property so sold, and to apply the pro *328 ceeds of such sale to the payment of the expenses of such advertisement, sale and conveyance, including One Hundred Dollars attorney’s fees, and such commission for said Trustee as may be at the time of such sale allowed by the laws of Colorado to sheriffs on sales of real estate on execution, in the County where said premises are situate; then, to the payment of all money and sums of money which said Trustee or his successor in trust may, at any time before such sale, have paid or expended, either to effect any insurance upon said premises, or to redeem said premises from any sale or sales for taxes or assessment, * * * with interest on all money so expended at the rate of twelve per cent, per annum from the time of paying the same up to the time of such sale; then, to the payment of the principal of said note and the accrued interest thereon at the time of such sale remaining unpaid, and to pay the surplus, if there be any, unto the said parties of the first part, their heirs or assigns, on reasonable request. * * *
“ And the said parties of the first part for their heirs, executors and administrators, do covenant and agree with the said Trustee and his successor in trust, * * * that they will in due season pay all taxes and assessments on said premises; and at the request of the party of the second part will keep all buildings that may at any time be on said premises during the continuance of said indebtedness, insured in such company or companies as the holders of said note may from time to time direct, for such sum 'or sums as such company or companies will insure for, not to exceed the amount of said indebtedness, except at the option of said parties of the first part, and will assign, with proper consent of the insurers, the policy or policies of insurance to said party of the second part, as further security for the indebtedness aforesaid. And in case of the refusal or neglect of said parties of the first part, or either of them, thus to insure, or assign the policies of insurance, or to pay such taxes or assessments, said party of the second part, or his successor in trust, or the holder of said note or either of them may procure such insurance, or pay such taxes or assessments, and all moneys *329 thus paid, with interest thereon at twelve per cent, per annum shall become so much additional indebtedness, secured by this deed of trust, and to be paid out of the proceeds of sale of the lands and premises aforesaid. * * *
“ And it is agreed, That in case of default in any of said payments of principal or interest as aforesaid, or in a breach of any of the covenants or agreements herein, then and in that case the whole of said principal sum hereby secured, and the interest to the time of the sale, and all moneys advanced as aforesaid, including insurance premiums, at the option of the legal holder of said indebtedness, may at once become due and payable, and the said premises be sold in like manner and with the same effect as if the said indebtedness had matured.”
Aside from the question of agency, which is directly presented by the pleadings, two propositions are submitted to us by counsel for the plaintiffs; first, that the note was not transferred in such manner as to cut off defenses which might have been interposed as against the payee; and, second, that the note and trust deed together constitute one contract, that by reason of covenants and conditions in the trust deed not contained in the note, neither the contract itself, nor the note as part of the contract, was negotiable, and that, therefore, payment by the makers to the original payee, without notice of the transfer, operated to satisfy the note and trust deed.
1. We find on the back of the note this indorsement:
“ Pay to the order of
“ Globe Investment Company,
“By J. Lowell Moore, Treasurer.”
No question is made as to the authority of Moore, or the genuineness of his signature. Mr. Chaney, when he took the note, might have filled the blank space with his own name, and the indorsement then would have been an indorsement in full; but with the space unfilled, the indorsement was an indorsement in blank. If this were the only indorse *330 ment on tlie paper, it would, not be disputed that Chaney took the legal title, or, in view of the evidence, that he was a Iona fide holder. But we find on the back of the paper another indorsement in the form of a guaranty. It is contended that these two indorsements must be construed together as one contract, and that the terms of the guaranty are inconsistent with the obligation assumed by an indorser. The conclusion reached is that the contract was not intended to be, and was not, an indorsement, within the meaning of the term as it is used in relation to negotiable instruments. There is authority that a contract of guaranty of payment, written upon the note, and signed by the payee, is tantamount to an indorsement. Whether such is the law in this state, we need not inquire,- for in order that such a contract may have the effect of an indorsement, it must guarantee the payment of the note according to its terms. This was not such a contract. By the terms of the note the interest chargeable after maturity was twelve per cent per annum; but the contract guaranteed the payment of interest after maturity at the rate of only seven per cent per annum., It did not guarantee the payment of the note at maturity, but within two years after maturity. It was therefore not, of itself, such a guaranty as would amount to an indorsement of the note, and pass the legal title. Peck v. Bligh, 87 Ill. 317. But it seems evident to us that the only purpose of this contract was to define a liability which the guarantor chose to assume in place of the legal liability of an indorser. The blank indorsement on the back of the note transferred the legal title, unless the contract of guaranty operated in some way to give it a different effect. Speaking generally, indorsing a note, means writing one’s name upon it with intent to incur the liability of a party who warrants payment of the instrument, provided it is duly presented to the principal at maturity, not paid by him, and such fact is duly notified to the indorser. 1 Daniel on Negotiable Instruments, 667. Counsel reason from this that unless upon default of the maker, a right of action against the indorser, for the amount of the note, ac *331 cording to its terms, would accrue to the holder, what purports to be an indorsement, is not an indorsement. While conceding that if this blank indorsement stood alone, it would sufficiently transfer the note, yet they say that the contract of guaranty, being an express contract, and being inconsistent with the contract of indorsement, controls it, and takes from it the character and effect of an indorsement. But counsel assume too much. Although by an indorsement without any qualifying words, the indorser transfers the note, and at the same time assumes a well understood liability, yet the assumption of the liability is not necessary to the transfer. The indorser may limit his liability, or he may contract for an entire exemption from liability, and the transfer still be complete. For instance, he may write the words “ without recourse ” above his name. Such an indorsement, although relieving the indorser of responsibility, is not out of the usual and due course of trade, and cuts off defenses of the maker as effectually as if the indorsement had not been qualified. Lomax v. Picot, 2 Rand. 260; Stevenson v. O'Neal, 71 Ill. 314. Now if a stipulation by the indorser for immunity from liability does not, as between the holder and the maker, detract from the effect of the indorsement, neither would a stipulation limiting or otherwise qualifying the liability. If the indorser may contract that he shall not be liable at all, surely he may contract that his liability shall be different from that which, otherwise, the law implies. The special contract between the indorser and the indorsee does not in any manner affect the rights of the maker. It is a matter of no concern to the maker whether the holder can pursue the indorser or not. Whatever, as between themselves, the indorser and the indorsee may agree upon, the maker’s contract is unaltered. In every case of a sale of negotiable paper, there are two objects to be accomplished : first, to pass the title to the purchaser, and, second, to fix the relation of the vendor to the paper after the sale; but when the sale is perfected, and the title passed, what liability the vendor assumed, or whether he assumed any, is not a subject into which the maker *332 has any right to inquire. Crosby v. Roub, 16 Wis. 646. Applying these principles to the case at bar, we have no difficulty in holding that by the indorsement Chaney took the title to the note ; that by the contract of guaranty it was intended merely to limit or qualify the indorser’s legal liability to the indorsee; and that it is not competent to the plaintiffs to -question the legal effect of the contract.
2. The position taken and strongly maintained by counsel is that as the note and trust deed were executed contemporaneously, they are to be construed together as one instrument, and that the effect of the provisions of the trust deed, in so far as they relate to an indebtedness to be assumed by the maker of the note, is the same as if they were incorporated in the note itself. The trust deed provides for the payment of taxes and the insurance of the buildings on the premises by the grantors; or, in the event of their failure so to do, for the payment of the taxes and effecting of the insurance, by the holder of the note, or by the trustee, and the addition of the amount paid out by either for those purposes to the indebtedness secured by the trust deed; and it is argued that these provisions render the amount to be paid by the makers of the note uncertain, and so destroy its negotiability. We shall consider counsel’s proposition with some care.
Upon its face the note is negotiable. It was made for an amount certain, and was payable at a time certain. It might become payable before that time, but at that time it was in anjr event payable. It was therefore a negotiable promissory note. The expressed purpose of the trust deed was to secure the payment of this note, and the interest notes attached to it, in whosesoever hands they might be, and to indemnify the payee, its successors and assigns. Throughout the entire deed, the note is mentioned as something distinct from it, and its covenants and provisions have reference solely to the payment of the note. The general doctrine is that the note is the principal thing and the mortgage an accessory, and that the transfer of the debt, ipso facto carries with it the security. And where the debt is in the form of a negotiable *333 promissory note, if it is transferred for value before maturity, the bona fide holder is entitled to the benefit of the security free from any equities arising between the original parties. 1 Daniel on Negotiable Instruments, §834; 1 Jones on Mortgages, § 834; Fasset v. Mulock, 5 Colo. 466; Carpenter v. Longan, 16 Wall. 271. Even if this doctrine, is denied elsewhere, the cases of Fasset v. Muloek, and Carpenter v. Longan, fix it in this state. Were it not for certain stipulations in the trust deed, in virtue of which additions might be made to the debt secured, the case would be beset by no difficulty. But it is argued that these stipulations became part of the note; that as a result, the note was nonnegotiable; that, therefore, the payments to the Globe Investment Company, without knowledge by the plaintiffs of the transfer, discharged the note; and some authorities are cited and relied upon to support the contention.
The general rule, without doubt, is that where two separate contracts are executed at the same time, affecting the same'subject-matter, they are to be construed together as one contract; and where the maker of a note, at the time óf its execution, enters into a written agreement, by which he is personally bound, varying, or conditionally varying, the terms of the note, the stipulations of the writing enter into and become part of the note. Munro v. King, 3 Colo. 238. A mortgage may contain á personal covenant so expressed that the terms of the note would be modified and controlled by it. In such case, and upon the same principle, the covenant would be imported into the note; and, in determining the obligation and liability of the maker, should be construed with the note as part of it. But we do not think that the rule applies to a covenant which is inserted purely for purposes of security, and for the enforcement of which resort can be had only to the property mortgaged. This deed of trust provided that the plaintiffs should pay all taxes and assessments on the premises conveyed, and keep the buildings thereon insured ; that if they refused or neglected so to do, the trustee, or the holder of the note, might pay the taxes and procure *334 the insurance; and that in such event the moneys expended should become so much additional indebtedness secured by the trust deed; but the instrument also provided that if the amount so paid should not be refunded by the grantors, the party paying it should be reimbursed out of the proceeds of the sale of the premises. There was no promise by the grantors to refund the money. It is true that it was agreed that the expense should become so much additional indebtedness; but it was also stipulated that if the grantors did not choose to pay it, it should be paid by the land. It could not have been recovered in a suit upon the note. It was chargeable against the land, and the land alone. Furthermore, the deed provided that in any case of a sale, the money realized should be applied, first, to the payment of the expenses of the sale, including an attorney’s fee and trustee’s commission, next to the payment of the money expended for taxes and insurance, and which would constitute the “ additional indebtedness ” mentioned, and lastly to the payment of the note and interest. The parties here made a clear distinction between the “additional indebtedness,” and the indebtedness evidenced by the note. It was made a preferred claim, and must be paid before anything could be applied on the note. It was to stand upon its own footing, and be separate from, independent of, and superior to, the note. Hence it could not have been, and was not intended to be, part of the note. It seems evident to us that these several stipulations were introduced into the trust deed for the sole purpose of more effectually securing the debt for which the note was given. They were intended to provide against the impairment of the security by an accumulation of unpaid taxes upon the land, and the destruction of uninsured buildings, which were part of the land, and to enable the holder to protect himself against the consequences of any failure of the grantors to preserve the security intact, by making immediate sale of the property ; but the only end to be attained, the end, and no other, which every provision of the deed had in view, was the collection of the note. The deed of trust was therefore simply *335 a security for the payment of the note, and the sole purpose of its several provisions was to render the security available and effective. When the plaintiff took the note he took the right to resort to the security to make his debt, and for that purpose to avail himself of every provision it contained. Whatever would defeat his remedy upon one, would defeat his remedy upon the other; and if no defense could be interposed to an action upon the note, none could be interposed to a proceeding for the foreclosure of the trust deed.
Nothing would be gained by a critical examination of all the authorities to which counsel for the plaintiffs have referred us, and we shall therefore notice only a few of the principal ones. In Donaldson v. Grant, 15 Utah, 231, the maker stipulated in his note that upon his failure to comply with any of the conditions or agreements contained in the mortgage given to secure it, the principal sum, with the accrued interest, should, at the option of the holder, become due and payable, and should be collectible without further notice. The mortgage contained covenants for the payment of taxes, assessments and insurance, and against waste. The court held that the stipulation in the note rendered the instrument nonnegotiable. The conclusion was reached by construing the stipulation as binding the maker to perform the covenants contained in his mortgage, and therefore, to pay, in addition to the principal sum and interest, uncertain and indefinite amounts for taxes, assessments, insurance premiums, and damages for waste. The note by its own terms made the covenants of the mortgage part of it; and if the court’s construction of the stipulation was correct, we do not see that its decision can be assailed. The note in the case at bar contains no such stipulation. It is a complete instrument within itself, and it requires no resort to any other instrument to explain it. The Utah decision is therefore inapplicable. In Brooke v. Struthers, 110 Mich. 562, it was held that a provision in a mortgage binding the mortgagor to pay all taxes and assessments upon the premises, and, upon his failure for thirty days to pay any tax or assessment, valid or *336 invalid, making the note due and payable immediately, injected a contract into tbe obligation; and because it rendered the note uncertain in time of payment, and engrafted a contract upon it as part of it, the note was rendered nonnegotiable. Mr. Justice Montgomery concurred in the decision for the reason that at the time the note and mortgage were executed, the law of 1891 was in force, and the mortgage required the payment by the mortgagor, not only of the taxes levied upon the land, which he was under a legal obligation to pay without contract, but also of the taxes levied upon the mortgage, which were by law chargeable against the mortgagee! We are not advised either by the principal or concurring opinion what the law of 1891 was, and sufficient of the language of the mortgage provisions is not given to enable us to understand the full purport of the decision. But if the court intended to decide that a note, which was by its express terms payable at a time certain, but which, either by its own terms, or in virtue of the provisions of a separate instrument, might, in a contingency named, or upon some condition mentioned, mature earlier, was not negotiable, then the decision is not in accordance with our understanding of the law as it is generally stated, and, certainly, not in harmony with the doctrine announced by the supreme court of this state. Kiskadden v. Allen, 7 Colo. 206. See also Chicago Railway Equipment Co. v. Merchants National Bank, 136 U. S. 268, Dobbins v. Oberman, 17 Neb. 163, Ernest v. Steckman, 74 Pa. St. 13, and Carlon v. Kenealy, 12 Mees. & W. 139. Neither does it seem to be the doctrine of the supreme court of Michigan; for in the later case of Wilson v. Campbell, 110 Mich. 580, it is held that a note which may, upon condition, become due before the period fixed by itself for its maturity, is not therefore nonnegotiable. In Noel v. Gaines, 68 Mo. 649, it was decided that where two promissory notes, maturing at different dates, were secured by a deed of trust which provided that should the maker fail or refuse to pay the debt or interest, or any part thereof when it became due or payable, according to the tenor and effect of the notes, then the whole should become *337 due and payable, the notes and deed constituted but one contract, and the provisions of the deed controlled the language of the notes; so that upon default by the maker in payment of an installment of interest, they both became absolutely due; and demand by the holder upon the maker, of payment of the second note, on the date when it matured according to its terms, followed by notice of dishonor to the payee and indorser, came too late. This decision met with a vigorous dissent from Mr. Justice Hough, and was in direct conflict with previous utterances of the same court. Morgan v. Martien, 32 Mo. 438; Mason v. Barnard, 36 Mo. 384; Thompson v. Field, 38 Mo. 320. We find nothing in the plaintiffs’ authorities which would tend to produce a change in the views we have expressed,-even if they were directly in point. But for the most part they do not reach the questions which are debated here.
The theory that the provisions concerning the payment of taxes, and the procurement of insuraiiee, were part of the note, is beset by still another difficulty. The parties to the trust deed were the plaintiffs and the defendant Frost. • In ease of the failure of the plaintiffs to pay the taxes, and affect the insurance, it authorized Frost to expend the necessary money out of his own pocket. If he should make the expenditure, it would, by the terms of the deed, become an additional indebtedness but it would be an indebtedness to Frost, and not to the holder of the note. Our opinion is that in any view which may be taken of the case, none of the stipulations in the trust deed can be considered with the note as entering into it, or as in any manner, affecting the promise which it contains, or the legal liability upon it of tire makers.
The remaining question in the case is that of agency. The evidence shows that the plaintiffs had no knowledge that the Globe Investment Company was not the owner of the note until after the company had received from them the full amount due. It also appears that the company had an office in Kansas City, Missouri, and that the interest coupons, except the first two or three, which Avere collected by the defendant *338 Frost, as well as the principal amount, were paid to the company at its Kansas City office. The note was purchased from the company by E. R. Drummond, as the agent of Mr. Chaney, and the evidence tends to show that, so far at least as this note was concerned, Drummond was at all times his agent. Allison Z. Mason testified that he was connected with the Globe Investment Company from the time of its incorporation, first as treasurer, and then as president; and made the following statement concerning the relations which existed between the company and parties to whom loans were sold. “It was the custom of the company to send to each holder of each loan a notification and a request, thirty days before the maturity of the coupon, which was known as a coupon slip, asking the holder to attach the coupon then becoming due to this slip, and return both to the company; the coupon to be retained by the company for transmission to the borrower, and the coupon slip to be receipted and returned to the holder. The records show that in this Fisher loan, these coupons were forwarded to the company’s Kansas City office for delivery to the borrower upon the following dates: September 5, 1890, March 7,1891, September 12, 1891, March 15, 1892, September 5, 1892, March 6, 1893, September 15, 1893, March 15, 1894, September 5,1894.” J. Lowell Moore testified that he was treasurer of the company after 1889. Speaking of this note he said: “ The note was doubtless sold on the general understanding that we were to take care of the loan, and make all collections without charge to the purchaser, this being the universal custom with all loans sold by the company.” He also stated that the borrower knew only the Globe Investment Company in the matter; that the company received the payments in behalf of the holder of the loan; that it was the custom of the company to make all collections for parties to whom it sold mortgages; that it was the custom of the company to ask for coupons from the holders; that the facts that Chaney sent coupons upon request, evidenced such an understanding; that he knew of no written instructions, but that it was the custom of the company to collect the principal from the borrower *339 before receiving the mortgage papers. According to the evidence the company always notified the plaintiffs when the coupons were about to mature, the plaintiffs then forwarded the money to the company, and after receipt of the money, it sent the coupons to the plaintiffs.
Now it is said that the existence of an agency is not shown by the foregoing evidence. We are quite ready to concede that as the notes and coupons were by their terms payable at the office of the Globe Investment Company, the mere fact that the plaintiffs sent their money there, and received the coupons in return, has but little significance; and we also agree with counsel that even if the company was, as a matter of fact, the agent of Chaney to collect the coupons, it would not necessarily follow that it had authority to collect the principal. If the plaintiffs could urge nothing in support of their position that the company had such authority from Chaney to receive the money which they paid to it, as constituted it his agent for the purpose, except the transactions in relation to the coupons, we should feel compelled to determine the question against them. But Mr. Moore, the company’s treasurer, testified, in effect, that it was the universal custom of the company, applicable to all loans sold by it, to take care of the loans, and make all collections without charge to the purchaser, in pursuance of an understanding to that purport, which it had with him at the time of the sale. If the language of Mr. Moore means anything, it means that in every case of the sale of a loan an understanding was had, at the time, between it and the purchaser, that it should act in his behalf in all matters pertaining to the loan, and make all collections for him. “ All collections ” would include principal as well as interest. In the multiplicity of transactions individual instances may be forgotten, but a universal custom covers each of the separate particulars which make up the whole; and a statement that an entire business was conducted in accordance with a certain rule, is evidence, in a controversy affecting some one of its details, that the same rule was applied to that. While Mr. Moore was unable to recall what *340 specially occurred at the sale of the loan to Chaney, yet in saying that the company observed a fixed-custom in all cases, his statement necessarily applied to the case in hand. The term “ universal ” comprehends everything; and if the universal custom of the company was, in case of the sale of, a loan, to stipulate with the purchaser that it should have the care and charge of the loan, and make the collections, then the conclusion must be that by stipulation with Mr. Chaney, it had the care and charge of this loan, and made the collections as his agent. The plaintiffs supported their allegation of agency by the best evidence it was in their power to produce. Personally, they did not know that Chaney, or any person aside from the company, had any interest in the loan; and there was nothing to indicate the existence of an outside interest until, after full payment had been made, Chaney came to the surface as the owner. In the nature of things, for the purpose of uncovering the relations between Chaney and the company, the plaintiffs had no course open to them, except the one they pursued, unless, mdeed, they had called directly upon their adversary; but this they were not obliged to do. Whether the company had authority in fact to act for Mr. Chaney was within his knowledge. While, because the sale to Chaney was one of a multitude of similar transactions, the officers of the company had forgotten its details, and could, therefore, testify only as to general facts, he knew whether or not he had an agreement with it whereby it was to take charge of the loan as his agent, and, by speaking, he could speedily have settled the question. The agency was averred in the complaint, and denied in the answer. He knew that the question was directly involved in the pleadings, and was the principal issue in the case, so that the evidence introduced was no surprise to him; when proof was made from which the theory of agency was a legitimate deduction, it was incumbent upon him, if he denied that the company proceeded by his authority, to give the court the benefit of the actual facts; and, under the circumstances of the case, as the record discloses them, his silence is corroborative of *341 the conclusion which the evidence given justified, that the company, was, in fact, his duly authorized agent.
The plaintiffs paid the interest coupons regularly; at the end of four years from the date of the note, they sent the company $1,000, to be applied on the principal; and at the end of five years they paid the remainder, and the interest then due. It is contended that in no view of the case had the company authority to receive the payment of $1,000. In support of the contention, it is said that the note had not matured, and that if the evidence showed any authority in the company to collect the principal, that authority was limited by the terms of the note, and could not be exercised until the maturity of the note. The authority deducible from the evidence was quite comprehensive; but it is perhaps true that it would not justify the company in receiving any part of the principal until it was regularly payable. The note was dated October 15, 1889, and matured a few days short of five years afterwards. The interest was payable semiannually. But by a stipulation written across the face of the paper, the note was payable after three years at the maturity of any interest coupon. This was a privilege extended to the makers. Payment could not be compelled until the end of the full period, but they had the right at any time after three years, whenever an interest coupon became due, to make payment. The payment of $1,000 was made after three years, and consequently after the note was payable; and while precise dates are not given, it seems to have been made about the time of the maturity of an interest coupon. Receiving money at any time when by contract it was payable, was surely not in excess of the agent’s power. And if the company had authority to receive all the money before the ultimate maturity of the note, it had the same authority to receive a portion. It was agreed that at the expiration of a specified period, short of the final period, the note might be considered due, and payment at that time of either a part or the whole would, we think, be within the terms of the agreement. The plaintiffs had from the time named in the stip *342 ulation until the time of maturity named in the body of the note for the payment of the entire amount; and we find nothing in the stipulation which would make it the duty of the agent to refuse partial payments offered at the proper times between the two dates. If, when the note was finally due, the debt was fully paid, the note and stipulation were both satisfied.
The plaintiffs introduced a letter from Mr. Drummond to themselves, dated December 17, 1895, in which, apparently without knowledge that the note had been paid, he said, among other things, that as the Globe Investment Company had become insolvent, he would have to take other methods to collect the interest and principal. The defendants objected to the introduction of the letter. The proof tended to show that Mr. Drummond had full charge of Mr. Chaney’s business, so far at least as this note was concerned, and, in relation to it, was authorized to speak for him; and an inference is deducible from the letter that prior to the failure of the company, the writer, as Chaney’s agent, looked to it for the collection of the note, both interest and principal; but it is only an inference, and, of itself, would not have much weight. We do not regard the letter as of much importance, and our opinion would be the same without it as with it; but we do not think the court erred in admitting it. Upon the evidence of the company's authority which the record contains, and in the absence of any proof to the contrary, we must uphold the judgment of the district court.

Affirmed.