Thomson, J.
On the 2d day of December, 1892, Pryor M. Cloud executed and delivered to The Colorado Securities Company his promissory note, whereby, for value received, he promised to pay to the order of The Colorado Securities Company $600, on the 1st day of December, 1897, with interest after maturity at two per cent per month. Interest coupons for $21.00 each, representing the interest on the principal sum at the rate of seven per cent per annum until maturhw, and payable respectively on the first days of June and December, in the years 1893, 1894, 1895, 1896 and 1897, were attached to the note. The note contained an agreement that in case any interest coupon should remain due and unpaid for a period of thirty days, the note and accrued interest should, at the option of the legal holder, become due and payable; and the *328 instrument embracing the note contained a further agreement that if the note and interest should not be paid in full at maturity, the maker should pay an additional sum of •150.00 as an attorney’s fee. On the face of the note, the maker reserved a privilege of paying it at the expiration of three years. The note and coupons were, by their terms, payable at the office of the Importers’ & Traders’ National Bank, New York city, or at Denver, Colorado, at the option of the holder. Cloud secured the payment of this note by a trust deed of land. Henry J. Aldrich was the trustee named in the instrument. The trust deed was duly recorded immediately upon its execution. On the 27th day of December, 1892, The Colorado Securities Company, for a valuable consideration, indorsed and delivered the note to Rufus B. Cowing. Cowing resided in the city of New York, and, as the coupons matured, presented them at the office of the Importers’ & Traders’ National Bank in New York city, where they were paid, down to and including the coupon due December 1, 1894. On the 7th day of February, 1895, Henry J. Aldrich, the trustee named in the trust deed, executed and delivered to Cloud a deed of release and quitclaim of the premises conveyed by the trust deed, which deed of release recited that the note and interest had been fully paid. The note remained continuously in the possession of Cowing after its assignment to him, and no interest after December 1, 1894, nor any part of the. principal, was ever received by him. Shortly after the execution of the release, Aldrich absconded.
This proceeding was instituted by Cowing against Cloud to obtain a decree setting aside the deed of release, foreclosing the trust deed, and subjecting the land to the payment of the debt. The complaint, in addition to other necessary facts, alleged that the deed of release was executed without the authority or knowledge of the plaintiff. Cloud answered alleging payment of the note and interest in full to Aldrich. During the pendency of the proceeding, Cloud died, and his heirs and the administrators of his estate, were substituted as *329 defendants. Judgment was rendered for the defendants, and the plaintiff appealed.
The fact of the purchase of the note by the plaintiff from the payee for value, before maturity, is conclusively established. In argument, the following propositions are submitted to us in behalf of the defendants: First, that because, by its terms, the note might become payable at an earlier date than that fixed by itself for its payment, and because the instrument contained an agreement for the payment of an attorney’s fee in case of default by the maker in the payment of the note, the note was not negotiable, and the title of the plaintiff is not that of an innocent purchaser of negotiable paper before maturity. Second, that this is not a suit upon the note, but a proceeding to set aside the release, and foreclose the deed of trust, and the deed of trust is not a negotiable instrument. Third, the plaintiff constituted The Colorado Securities Company his agent for the collection of his coupons, or, at least, he estopped himself to deny that it was his agent for that purpose; ergo, payment of the note to that company was payment to the plaintiff.
I. The note contained a promise to pay a sum certain within a time certain. On the 1st day of December, 1897, the note would become due, and if it should not be paid on that day, the maker would be in default. The maker had the privilege, which he might exercise or not, of paying it earlier, or in case of a failure in the payment of an interest coupon for thirty days after it should become payable, the entire debt, and all accrued interest, would, at the option of the legal holder of the note, be immediately due and payable: but notwithstanding conditions might arise causing the note to mature earlier than the 1st day of December, 1897, on that day it was, in any event, payable. The note was, therefore, negotiable, unless its negotiability was destroyed by the agreement to pay an attorney’s fee. Daniel on Negotiable Instruments, § 43; Frost v. Fisher, 13 Colo. App. 322. But that agreement was no part of the note. Before it could become enforcible, a cause of action upon the note must have accrued 'to the *330 holder, and payment of the note, in full, at maturity, would render it void. The note was negotiable, notwithstanding the agreement. Seaton v. Scovill, 18 Kan. 433; Sperry v. Horr, 32 Iowa, 184; Gaar v. Louisville Banking Co., 11 Bush. (Ky.) 180; Dorsey v. Wolff, 142 Ill. 589.
II. It is true that this is a proceeding to cancel the release deed, and foreclose the mortgage; it is also true that there are decisions to the effect that because a mortgage is not a negotiable instrument, the assignee takes it subject to all defenses which might be available against the assignor; and in Longan v. Carpenter, 1 Colo. 205, the majority of the supreme court of the territory of Colorado, speaking through Belford, J., so held; but their opinion met with a vigorous dissent from Chief Justice Hallett, and the case was taken by appeal to the supreme court of the United States, where the judgment below was reversed, Mr. Justice Swayne, who delivered the opinion, saying: “ The assignment of a note underdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was nonnegotiable, or had been assigned after maturity. The question presented for our determination is, whether an assignee, under the circumstances of this case, takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative. The contract as regards the note was that the maker should pay it at maturity to any bona fide indorsee, without reference to any defenses to which it might have been liable in the hands of the payee. The mortgage ivas conditioned to secure the fulfillment of that contract. To let in such a defense against such a holder would be a clear departure from the agreement of the mortgagor and mortgagee, to which the assignee subsequently, in good faith, became a party. If the mortgagor desired to reserve such an advantage, he should have given a nonnegotiable instrument. If one of two innocent persons must suffer by deceit, it is more consonant to reason that he who ‘ puts trust and con *331 fidence in the deceiver should he a loser rather than a stranger.’” Carpenter v. Longan, 16 Wall. 271. The doctrine announced in the foregoing opinion is the law in this state. Frost v. Fisher, supra.
III. The testimony of Mr. Cloud was taken before his death. He testified that such of the interest coupons as were paid before payment of the note, and, afterwards, the note, with the remaining coupons, were paid to The Colorado Securities Company through the Saguache National Bank. The plaintiff presented his coupons to the Importers’ & Traders’ National Bank of New York city, and received his money. The uncontradieted statement of Mr. Cloud that he paid the money to The Colorado Securities Company, must be accepted as true ; so that the money to pay the coupons was forwarded by The Colorado Securities Company to that bank. From these unquestioned facts, counsel for the defendants arrives at the conclusion that The Colorado Securities Company was the agent of the plaintiff for the collection of the coupons and the note, and the result is reached through the following process of reasoning: “When appellant deposited the coupons with the bank, it became his agent, and had knowledge of the acts of The Colorado Securities Company. Knowledge of the agent is knowledge of the principal, and ostensible authority may be conferred by a single act of recognition.” Mr. Cloud made his note payable in Denver, or at the office of the bank in New York. It was Mr. Cloud and not the payee who designated the Importers’ & Traders’ National Bank as a place of payment; and, if payment should be made at that bank, it was his duty to see that the necessary funds were there at the proper time. The bank, in receiving the money from him, paying it out, and taking up the coupons, acted as his agent, and its authority so to act, was expressly conferred by him in the note which he made.' By sending his money to the securities company, he constituted that company his agent also; and its duty as his representative, if he accepted the trust was to forward the money which it received from him to the bank in New York, to be turned over to the holder in *332 exchange for his coupons. The plaintiff, after his purchase of the note, had nothing to do with the securities company. He went to the agency designated by the plaintiff, where he had the right to suppose that the money, if not paid directly to himself, would be found; and an assumption that the securities company was his agent, or that the bank was his agent, or that he was responsible for anything that either of them did, is purely gratuitous.
The plaintiff, as an innocent purchaser of the note, took a title, against which, defenses which might have been good if there had been no transfer, are utterly unavailing. There is no law which requires the purchaser of an underdue negotiable promissory note to apprise the maker of his purchase. The maker is bound to know that at any time after its execution, and before its maturity, the paper is liable to be in the hands of another who has paid value for it, and if he delivers his money to the original payee, without receiving’ his note, supposing that he is paying the debt, he does so at his own peril. The mortgage is merely a security for the note; and no defense, not good against the note, is available against the mortgage.
Thus far we have proceeded on the hypothesis that Mr. Cloud did, in fact and in good faith, deliver his money to the securities company in supposed payment of his note ; but the record does not support the theory. The money of Mr. Cloud was not delivered to the securities company in payment of the note, except upon a condition which was never performed. Mr. Cloud did his business through the Saguache County Bank. Charles Tarbell, the cashier of that bank, was a witness, and testified that on the 12th day of January, 1894, he wrote a letter to The Colorado Securities Company, enclosing a draft sufficient to satisfy the note and unpaid interest, and saying: “ Referring to your letter of January 1, 1891, to P. M. Cloud, I have added a few days’ interest after that time. If sufficient and satisfactory, please send us his note canceled, deed of trust and release, and all the papers connected with his loan. If not,, please return *333 our draft.” The securities company seems to have paid no attention at all to the letter; and on the 22d day of the following August, more than seven months afterwards, Mr. Tarbell again wrote the company, saying, among other things: “ P. M. Cloud also informs us that he has not the note and release of this loan paid by us in January. Please give these matters your attention.” The note was never forwarded to Cloud, for the very good reason that the company did not have it; but on the 7th day of February, 1895, the release which compelled this proceeding, was executed and recorded. It will be seen that the draft sent to the company was not to be applied as a payment, except upon the surrender to Mr. Cloud of his note. If the company could not or would not deliver him the note, the instruction to it was to send back the draft. Without the return of the note, there was to be no payment. The note was not returned, and there was, therefore, no payment. There is no theory upon which the release in question is of any force, or possessed of any vitality. It is utterly void; but the record of it which was made, constitutes a cloud upon the title conveyed by the deed of trust; and the removal of the cloud must precede the decree of foreclosure.
The judgment is reversed, with instruction to the court below to enter a decree in accordance with the prayer of the complaint.

Reversed.