Thomson, J.
On the 12th day of July, 1889, Robert S. Campbell conveyed tó Henry J. Aldrich certain real estate in the deed described, in trust, to secure the. payment of the following note:
“$2,580.00. Denver, Colo., July-12, 1889.
“On the first day of July, 1894, value received, for money loaned, I promise to pay to the order of The Colorado Securities Company, twenty-five hundred and eighty dollars, with interest .on the same at the rate of two per cent per month, after due, until paid. And I hereby agree that if default, is made in the payment of any one of the coupons hereto attached or any part thereof, and the same shall remain due and unpaid for the period of thirty days, in such case'this note, with interest accrued thereon, shall at the option of the legal holder hereof, become due and payable and may be demanded and collected immediately, anything herein contained to the. contrary notwithstanding, according to the tenor of a certain deed of *419 trust, bearing even date herewith, given by Robert S'. Campbell to Henry J. Aldrich, trustee. Payable at the office of the Importers’ and Traders’ National Bank, New York City. Robert S. Campbell.”
The trust deed was immediately recorded. Attached to the note were ten interest coupons for semiannual interest from July .1, 1889, until its maturity. The coupons, like the note, were, by their terms, payable at the Importers’ and Traders’ National Bank of New York City. The Equitable Mortgage Company purchased this note with the attached coupons about the 29th day of July, 1889, and the payee endorsed it as follows:
“Pay to the order of Equitable Mortgage Company without recourse.
“The Colorado Securities Company,
by H. J. Aldrich, President. ’ ’
The trust deed contained an agreement for the payment by Campbell of an attorney’s fee of one hundred dollars in case of the institution of a suit; for the insurance by- him of the buildings; for the payment by him of all taxes; and for the repayment of any money expended by the payee or its assigns, or’ by the trustee, for the protection of the title; and provided that in case of default in payment of the notes or interest at the time, in the manner and at the place, specified for such payment, or, in case of waste, nonpayment of taxes or breach of any condition or agreement contained in the deed, on application of the holder of the note, the trustee might, after thirty days published notice, sell the premises at public vendue to the highest cash bidder, deliver to the purchaser a deed of conveyance, and apply the proceeds of the sale, first, to expenses, including an attorney’s fee of one hundred dollars, and commissions, second, to the repayment of expenditures for insurance, taxes, assessments or the protection of the *420 title, and, third, to the payment of the amount due on the note.
The Equitable Securities Company was organized to continue the business of the endorsee as its successor, and received the notes with the other assets. All the coupons except the last, were presented by the Equitable Mortgage Company at the Importers ’ and Traders’ Bank in New York City, and were there paid. There being no funds in the bank for the payment of that coupon, it was collected from Aid-rich in June, 1895. Campbell, supposing that the note remained the property of The Colorado Securities Company, always remitted the interest money to it, and, in compliance with its request, made each remittance in time to reach the company’s office on. the 25th day of the month preceding the maturity of the coupon. At each payment he received from the company an acknowledgment of the receipt of the money. The coupon came later. We do not know what was the usual form of the acknowledgments, for the abstract contains only two of them, one of which reads as follows:
“The Colorado Securities Co., Denver, Colo. Farm Loans and Investment Securities.
“Bobt. S. Campbell,
“Dear Sir: Your favor of..........received enclosing $77.40 to pay interest to July 1,1892. Coupon will be sent you when received from the holder.
“Colorado Securities Co.
‘ ‘ July 1, 1892. By H. J. Aldrich. ’ ’
On the 25th day of June, 1894, Campbell executed a deed of trust, whereby he conveyed to George S. Adams, public trustee of Weld county, the property described in the trust deed to Aldrich, to secure the payment to The Farm Investment Company of his note of that date for $3,500. Part of the consideration of the note was the agreement of the *421 investment company to pay the note which had been given to The Colorado Securities Company. On the 21st day of June, 1894, The Farm Investment Company, in attempted performance of its agreement, remitted the amount due on that note to The Colorado Securities Company. The holder of the note received none of the money except the amount of the last coupon, which, as we have seen, he obtained from Aid-rich.
On the 5th day of December, 1894, Aldrich, as trustee, executed to Campbell a deed of release, reciting the full payment of the note made to The Colorado Securities Company, and releasing the land by which it was secured from the lien of the trust deed. That release, and the trust deed to Aldrich were both duly recorded.
This proceeding was instituted by the Equitable Securities Company to obtain a decree cancelling the deed of release, appointing a proper person to act as trustee in the place of Aldrich, and awarding other appropriate relief. Campbell and The Farm Investment Company were made parties defendant.
The defense interposed is that the provision in the note that if any of the interest coupons should remain due and unpaid for thirty days, the note and accrued interest might be collected immediately according to the tenor of the deed of trust, imports into the note the terms of the trust deed and renders the instrument non-negotiable, so that the defendants, having no notice of the transfer of the paper, will be protected in their dealings with the payee. The assumption of want of notice requires some modification as we shall see hereafter. The language of the note referring to the trust deed, merely permits immediate foreclosure for the collection of the whole debt, in case of default for thirty days in the payment of any interest coupon. To collect the note according *422 to the tenor-of the trust deed would simply be to take the steps prescribed by that instrument for subjecting the land to. its payment. The provision gave the holder special permission to do, before the maturity of the paper, exactly what he might do afterwards, without other authority, than that expressed in the trust deed, and in no manner affected the personal liability.of the maker. The maker promised to pay a sum certain upon a day certain, and the instrument was, therefore, a negotiable promissory note.—1 Daniel on Negotiable. Instruments, § 43; Cowan v. Hallack, 9 Colo. 572; Frost v. Fisher, 13 Colo. App. 322; Cowing v. Cloud, 16 Colo. App. 326, 65 Pac. 417.
But we do not. see how, in view of the facts which have been laid before us, a concession of the non-negotiability of the paper would be of any benefit to either of the defendants. The fact that a note is not negotiable is no excuse for knowingly or negligently paying it to the wrong person. Campbell employed The Farm Investment Company to pay his note, furnishing it the money for the purpose. The remittance to The Colorado Securities Company was made by him through his agent, The Farm Investment Company, and its act was his act. In view of a number of things which he knew, in remitting for the payment of the note to The Colorado Securities Company, he assumed the risk of the disposition by that company of his money. He made the note and coupons payable at the office of the Importers’ and Traders’ National Bank of New York, and by the deed of trust securing the paper, he specially stipulated that a failure by him to pay the note or interest at that particular place would put him in default, and authorize a foreclosure. He therefore knew that the money was payable at the office of that bank, and nowhere else; and that it was there that he must expect to find his note. Possessed of such knowledge, Campbell’s act *423 in trusting his money to ■ The Colorado Securities Company without receiving his note in exchange, was grossly negligent. But this is not all. The receipt from The Colorado Securities Company for the money sent it to pay the interest due July 1,1892, advised Campbell that he must wait for his coupon •until it could be received from the holder. The only inference to be drawn from that language is that the coupon did not belong to The Colorado Securities Company, and that before it could be forthcoming, the holder must receive his money. The information ■conveyed by the receipt demanded inquiry by Campbell to ascertain whether the holder of the coupon was not also the holder of the note to which it was attached, as well as all the other unpaid coupons. Such inquiry would have disclosed the real 'situation, and Campbell is charged with knowledge of the facts to which it would have led.—Appelman v. Gara, 22 Colo. 397.
Campbell’s defense is wholly without equity.
Nor is the position of The Farm Investment Company any better. Its situation was not that of an innocent purchaser. It loaned its money and took its security while the trust deed to Aldrich was an acknowledged encumbrance. That trust deed described the note as payable at the office of The Importers’ and Traders’ National Bank of New York. The investment company is conclusively presumed to have known that the note and coupons were payable at that bank, because the record disclosed the fact; and for the same reason it is charged with knowledge that payment anywhere else, unless made directly to the holder, would not be a payment. The trust deed expressly so provided. It was its duty to know that the place to send the money for the payment of the’note, was the Importers’ and Traders’ •National Bank-in the City of New York, and not The *424 Colorado Securities Company’s .office in the city of Denver; and it will be held to a knowledge which it ought to have possessed. It also knew that, as a negotiable promissory note, the paper was liable, at any time before it matured, to be in the hands of an innocent holder for value; and such knowledge emphasized its obligation to forward the money to the designated place of payment. It agreed with Campbell to pay his note, but it negligently failed to do so, and lost his money. There is nothing in its ease which appeals to a court of equity.
As against the plaintiff, this deed of release was void from the beginning. The trust deed securing the note has, ever since its execution, been, and now is, in full force, and the only effect of the release is to cast a cloud upon the security of the plaintiff.
The judgment will be affirmed. Affirmed.