[No. 5374.]

[No. 3024 C. A.]

## WALES ET AL. V. MOWER.

1. **Appellate Practice—Principal and Agent—Presumptions.**

A letter to the writer's agent respecting a loan will be presumed to refer to the loan in controversy, in absence of a showing in the record that it referred to another loan.—P. 149.

2. **Principal and Agent—Implied Authority to Collect Loan.**

Authority to reloan money before the maturity of a loan, implies authority to collect such loan.—P. 151.

3. **Principal and Agent—Mortgages—Money Paid to Agent— Remedy of Principal.**

In an action to restrain a mortgage foreclosure on the ground that the note secured had been paid to the mortgagee's agent, who had not paid the money over, it was not error to decree the note satisfied, on the theory that it destroyed the mortgagee's evidence of a cause of action against her agent, since, having found that the agent was authorized to collect the note, it followed that payment to him satisfied it; the mortgagee's cause of action is against the agent for money had and received, the proof thereof being found in his evidence in this case.—P. 151.

4. **Principal and Agent—Proof of Agency.**

The rule that neither agency nor the extent of authority can be proved by the "declarations" of the alleged agent, does not exclude testimony of an alleged agent as to the fact of agency.—152.

5. **Same.**

The testimony of an alleged agent having been properly admitted as tending to show his agency, exhibits and answers to cross-interrogatories propounded to the principal are admissible to corroborate the agent and as explanatory of the manner in which the business was transacted by the parties.—P. 153.

*Appeal from the District Court of Delta County.*

*Hon. Theron Stevens, Judge.*

Action by Maggie Mower against L. M. Wales, N. E. Clark, as public trustee of Delta county, Colorado, and D. S. Baldwin. From a judgment for plaintiff, defendants appeal.          *Affirmed.*

Mr. FRED N. DICKERSON, Mr. JOHN GRAY, and Mr. G. D. BARDWELL, for appellants.

Messrs. KING & STEWART, and Mr. PORTER PLUMB, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

An action to restrain the sale of real estate under a deed of trust, upon the ground that the note, to secure which the deed of trust was given, had been paid.

The complaint alleges that plaintiff (appellee here) is, and since January 31, 1900, has been, the owner of the property; that July 1, 1896, one of plaintiff's grantors executed and delivered to the public trustee of Delta county a deed of trust conveying two lots in the town of Delta, to secure payment of a $400 note to Baldwin, one of the defendants; that thereafter, the immediate grantor of plaintiff purchased the property and assumed and agreed to pay the debt secured by the deed of trust; that September 30, 1899, plaintiff's immediate grantor (her husband) paid the principal and interest of the debt to Baldwin; that Baldwin agreed to cause the deed of trust to be released; that Baldwin was the authorized agent, in the transaction, of L. M. Wales, one of the defendants (appellant here), who claimed some interest in the indebtedness secured by the deed of trust; and that appellant had caused the public trustee to publish in a newspaper of the town of Delta a notice of foreclosure sale.

The separate answer of appellant admits the ownership of the property as alleged in the complaint; the execution of the deed of trust; the assumption of the indebtedness by plaintiff's immediate grantor; alleges that she was the owner of the

$400 note secured by the deed of trust; denies that
Baldwin was her agent for any purpose; or to collect
the principal of the note; denies that any part of the
principal has been paid, or the interest thereon since
January 1, 1899, except $42.25 paid April 14, 1903;
alleges that July 1, 1896, plaintiff's remote grantor,
Harriet H. McGranahan, made and delivered her
note payable to Baldwin for the sum of $400, payable
three years after date, with interest at 8 per cent.
per annum, according to six interest coupons of $16
each attached to said note; sets out the note and the
interest coupon due July 1, 1899, attached thereto
(the note and interest coupon were payable at the
office of Baldwin); that July 18, 1896, Baldwin as-
signed the note and the interest coupons attached
thereto to defendant; that since said date defendant
has been the owner and in possession of the note and
coupons, and that there is now due upon said note
and coupons $585.50.

There was no reply. The important issue pre-
sented by the pleadings was the agency or authority
of Baldwin to collect the principal of the note.

Mr. Mower (husband of plaintiff, and her im-
mediate grantor) testified that September 30, 1899,
he paid Baldwin (by check, introduced in evidence)
$416; that Baldwin did not have the note; that he
said it was back east; that he would send and get it
and have the deed of trust released; that he paid the
interest prior to the time he paid the note; that the
payments were made to Baldwin at his office.

Baldwin, the alleged agent, testified, in sub-
stance, that he met Mrs. Wales, who was then Miss
King, in Connecticut, in 1892; that he had not seen
her since that time; that at the time he met her, upon
her request, he agreed to loan money for her and
secure it on real estate; that she sent him $400, which
he loaned in 1893 for three years, secured by a deed

of trust; that he collected the interest as it fell due, and sent the interest to Mrs. Wales, who returned to him the coupons therefor; that when the first loan matured, he collected the principal; that he made the loan to Mrs. McGranahan, taking the note and deed of trust in controversy; that he sent the note to Mrs. Wales shortly after it was made, and had not seen it since, until it was introduced in evidence; that Mr. Mower paid him $416, as testified to by him; that he had not paid that amount to Mrs. Wales.

Interrogated as to what his instructions were as to the principal of the loan, he answered:

"I was instructed when it was due to collect the principal and re-loan it or return it to her as she might dictate."

Plaintiff introduced in evidence, over the objection of appellant, fourteen letters written by Mrs. Wales to Baldwin, and received by him in due course of mail; the first dated October 25, 1894; the last dated June 24, 1899. These letters tend to support the inference that Baldwin was the agent of Mrs. Wales to collect the interest and the principal for the purpose of re-loaning the same. This is particularly true of Exhibit 14, written June 24, 1899:

"Another six months has rolled around and another three years have past. Enclosed you will find my last coupon. Now I would say, if you want to invest or loan my money for another three years, you can do so, providing you give me as good security as you have done in the past. Please let me hear from you at once."

In the absence of anything in the record to show that the above letters refer to any other loan than the one in controversy herein, it is assumed that such was the fact.

The deposition of Mrs. Wales was read in evidence. Interrogated as to whether she had instructed

or authorized Baldwin to collect any part of the Mc-Granahan note, the note in controversy, she answered: "I never did."

She further testified:

"I sent defendant Daniel S. Baldwin $400 that he loaned to Mr. Van Tyle and it was paid to Mr. Baldwin, who then loaned it for me to Mrs. Mc-Granahan, and I expected a note made payable to me. When the note came it was made payable to Baldwin and assigned to me on a separate piece of paper attached to the note. The assignment has been lost and by diligent search I cannot find it. I never authorized Baldwin to collect the interest, only one payment at a time, when I would send a coupon for collection. I never sent him the note for collection or authorized him to collect it; neither did I authorize him to make the note payable to himself."

Cross-interrogatory 10 was:

"Did you not, in the month of June, 1899, just prior to the date when said debt became due, write to Baldwin to collect and re-loan the money, provided he could get as good security as he then had, and if he could not get as good security as the McGranahan property, to send the money to you? A.—No, I never wrote Baldwin to collect the McGranahan note."

The witness was evidently mistaken in her answer to this question, as Exhibit 14, the letter written June 24, 1899, just preceding the maturity of the debt, shows that she wrote Baldwin:

"If you want to invest or loan my money for another three years, you can do so, providing you give me as good security as you have done in the past."

It is quite probable that the witness had forgotten this letter, written by her some four years preceding the time when her deposition was taken.

The letters introduced in evidence tend to cor-

roborate Baldwin's testimony to the effect that he was authorized to collect the principal of the note.

Authority to reloan the money, given by the letter of June 24, written before the maturity of the loan, implies authority to collect the loan about to mature.

The case was heard by the court without a jury, who made findings of fact and rendered a decree granting a permanent injunction restraining the sale of the lots, decreed the note paid, the deed of trust a cloud on the title, and ordered the public trustee (who was a defendant) to release the deed of trust.

It is said that the court erred in decreeing the note paid and satisfied, upon the ground that it destroyed appellant's evidence of a cause of action against Baldwin. Having found that Baldwin was appellant's agent to collect the principal of the note, it necessarily followed that payment to Baldwin paid and satisfied the note; appellant's cause of action against Baldwin is for money had and received to her use; proof of her cause of action against Baldwin is found in his evidence in this case, which he will scarcely contradict.

Objection was made to the introduction of Baldwin's testimony as to his instructions from appellant in regard to loaning and reloaning the money, the reception of the exhibits referred to, and certain cross-interrogatories attached to the deposition; all of which objections were overruled, and error is assigned upon these rulings.

The argument in support of these assignments of error is based upon the rule that "It is well settled that neither the fact of agency, nor the extent of authority, can be proved by the declarations of the alleged agent."

In support of this contention *R. E. Lee S. M. Co. v. Englebach*, 18 Colo. 106; *Extension G. M. & M.*

*Co. v. Skinner,* 28 Colo. 237, 239; and, *Burson v. Bogart,* 18 Col. App. 449, are cited.

In the *Englebach case,* it was said:

"It is well settled that neither the fact of agency nor the extent of authority can be proved by the declarations of the alleged agent. And it is equally as well established that when an agent makes a contract or does any act representing his principal, his declarations made at the time explanatory of the act are admissible in evidence on behalf of either party. * * * It is true that as a general rule such declarations ought not to be received until proof has been made of the agency. But the order in which evidence may be introduced is almost entirely within the discretion of the trial court."

In all of the cases cited, the testimony of the alleged agent was not introduced. Here the alleged agent testified. The rule invoked does not exclude testimony of an alleged agent as to the fact of agency.

In *Fisher v. Denver Nat. Bank,* 22 Colo. 373, 382, it is held that the alleged agent himself may testify as to the agency.

In *Nyhart v. Pennington,* 20 Mont. 158, 50 Pac. 414, objection was made to the testimony of an alleged agent, on the ground here urged. The court said:.

"Appellants invoke a generally correct rule of law, but an inapplicable one. Plaintiffs were not trying to prove agency by the declarations of the agent, but by his sworn testimony to the fact. This they could do. The rule is that the declarations of an agent are not competent to establish the fact of his agency. But the declarations of the agent are very different from his testimony to prove the fact of his agency."

In *O'Leary v. German-American Ins. Co.,* 100 La. 390, it was held, that the rule that the authority

of an agent cannot be sustained by his own declarations does not render it impossible to prove the authority of an agent by his own testimony.

In *Howe Machine Co. v. Clark*, 15 Kan. 494, Mr. Justice Valentine, writing the opinion of the court, said:

"It is competent to prove a parol agency, and its nature and scope, by the testimony of the person who claims to be the agent. It is competent to prove a parol authority of any person to act for another, and generally to prove any parol authority of any kind, by the testimony of the person who claims to possess such authority. But it is not competent to prove the supposed authority of an agent, for the purpose of binding his principal, by proving what the supposed agent has said at some previous time. Nor is it competent to prove a supposed authority of any kind, as against the person from whom such authority is claimed to have been received, by proving the previous statements of the person who, it is claimed, had attained such authority."

No authority has been cited contrary to the doctrine above announced. The authorities cited are inapplicable to the case at bar, for the reason, that they apply to declarations made by the agent to another, who is introduced as a witness to testify to such declarations, and not to the direct testimony of the agent himself. All authorities hold that the agent is competent to testify to the agency.

The testimony of Baldwin having been properly admitted, the exhibits and answers to the cross-interrogatories were admissible, as tending to corroborate the testimony of Baldwin, and as explanatory of the manner in which the business was transacted by the parties.

No error was committed by the court in admitting the evidence objected to.

Counsel for appellant contend that, while one may be the agent of another, for the purpose of loaning money and collecting interest, this does not constitute him a general agent with authority to collect the principal, and that possession of the securities is the indispensable evidence of the agent's authority to collect the principal.—*Lester v. Snyder*, 12 Col. App. 351; *Frost v. Fisher*, 13 Col. App. 322; *Cowing v. Cloud*, 16 Col. App. 326; *Smith v. Kidd*, 68 N. Y. 130; *Cooley v. Willard*, 34 Ill. 68; *Trowbridge v. Ross*, 105 Mich. 598, 63 N. W. 534; *Crane v. Gruenewald*, 120 N. Y. 274, 24 N. E. 456, are cited in support of this position. The abstract rule of law is correct as applied to the cases cited, but the authorities cited may be distinguished from the case at bar.

In *Lester v. Snyder*, it was said (p. 356) :

"There was no evidence adduced showing or tending to show that Aldrich or the securities company was appointed by Steele as his agent, or authorized by him to collect or receive any payments."

Aldrich and the securities company were the alleged agents, to whom the payments of principal were made. Steele was the holder of the note. Further, it appears from the opinion that the payments were made prior to the maturity of the note.

*Frost v. Fisher* is against the contention of appellant. The opinion is to the effect, that testimony as to the universal custom of the investment company, the alleged agent, to collect notes sold by it made a *prima facie* case which the principal should have overcome. That case turned upon the point that the principal failed to take the stand and deny the inference of agency which was legitimately deduced from the evidence, as to the universal custom of the investment company in making collections of notes sold by it.

In *Cowing v. Cloud,* there was no direct evidence of the agency, and payment was made to the alleged agent before maturity of the note, which brings the case within the ruling in *Lester v. Snyder.*

In *Smith v. Kidd,* payment was made to the alleged agent before maturity. The court said (p. 134):

"There was no direct proof of authority from the plaintiff to George to collect the principal of the mortgages in controversy, or of any general authority to collect the principal of her mortgages. Such authority was inferred by the court from the course of dealing between the plaintiff and George subsequent to the payment in question, and from her acceptance of securities from him in 1874, about the time of his absconding."

And, again:

"The possession of the securities by the attorney is the indispensable evidence of his authority to collect the principal * * * and that whoever pays him without that evidence does so at his own risk, unless he can prove express authority *aliunde;* and that the fact that the agent has, on other occasions, received principal which he has paid over to his client is not, in this instance, proof of such authority."

In the other cases cited, there was no direct proof that the alleged agent was authorized to receive payment of the principal.

This brief review of the cases cited by counsel for appellant distinguishes all of them from the case at bar. In the cases cited, payment was either made before maturity, or there was no direct proof of agency. Here payment was not made until after maturity, and there was direct proof of Baldwin's agency to receive payment of the principal of the note. All the authorities cited hold that, where there

is no direct proof of the agency, but it must be inferred from the acts of the parties, possession of the securities by the alleged agent is indispensable for the protection of the payer; from which it may be deduced that in a case where agency is in issue, it may be proved as any other fact is proved; and when direct evidence is introduced as to the agency, and payment is made to the agent, possession of the securities is not indispensable.

No case has been cited, and none has been found, where the alleged agent testified directly to the agency. Possibly this arises from the fact that no agent has been found with the hardihood to take the stand against his principal, and testify that he was a defaulter.

It is apparent that there was a direct and irreconcilable conflict between the evidence of the principal and the alleged agent. The evidence of the alleged agent is corroborated by the letters of appellant, and, to a certain extent, by appellant's deposition. Under the well-settled rule in this jurisdiction, we cannot set aside the findings made by the trial court, as the case does not come within any of the exceptions to the general rule. Counsel for appellant recognize the rule, and seek to avoid it by contending that the rule should not be applied, for the reason that nearly all of the material evidence in the case is found in the deposition and letters of Mrs. Wales. This suggestion eliminates entirely the evidence of the alleged agent, which is certainly material, and constitutes quite one-half of the evidence found in the record. We do not think the case comes within the exception stated. The judgment must be affirmed. *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concur.