## No. 11,804.

### GALLIGAN *v.* SCHAPIRO.

Decided October 17, 1927.

Action to quiet title. Judgment for plaintiff.

### *Affirmed.*

1. PRINCIPAL AND AGENT—*Banks and Banking.* A bank which in a course of dealing collected notes and interest thereon for another, reinvesting the fund at times, held to be his agent, and payment of a note to the bank payment to the owner which discharged the obligation.

2. *Banks and Banking.* The contention that a person procuring a new loan from a bank, from the proceeds of which the old note was paid, thereby made the bank his agent, overruled.

*Error to the District Court of the City and County of Denver, Hon. Francis E. Bouck, Judge.*

Mr. ROBERT H. KANE, for plaintiff in error.

Mr. PHILIP HORNBEIN, Messrs. QUIAT, GINSBERG & QUIAT, for defendant in error.

*Department One.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THE defendant in error will be referred to here as plaintiff, and the plaintiff in error as defendant, the position they occupied in the trial court.

This action was brought to quiet title to certain real estate. By the evidence and the admission of the parties, there appears to have been established the following facts:

On October 30, 1908, one Samuel Bland executed his promissory note of that date for the sum of $2,000, payable in three years thereafter to Frank L. Bishop, at his office in Denver, and to secure payment of the same, executed to the public trustee of the City and County of Denver, for the use of Bishop, a trust deed upon certain real estate, including that involved in this proceeding.

In the year 1909, plaintiff purchased, of the real estate described in the trust deed, that portion involved in this action. At that time, Bland paid $500 on the note, and plaintiff assumed and agreed to pay the remaining $1,500. When the note became due in 1911, it appears to have been extended either to 1914 or to 1917, but the evidence is not clear as to the period of extension. Bishop transferred the note to the Home Savings & Trust Company in 1910. From the time plaintiff purchased the property, until in August, 1923, he continued to pay the interest on the note quarterly to Bishop and the bank at Bishop's office in the bank.

On August 7, 1923, Bishop, for the bank, made a new loan to plaintiff for $3,500, the plaintiff paying $35 as a commission therefor. Of this new loan, $1,500 was ap-

plied to the payment of the note in controversy, and $2,000 placed on deposit to the credit of plaintiff. The note thus paid was in the bank at that time but was retained by Bishop for the purpose, as he stated, of taking it to the public trustee to procure a release of the trust deed.

Bishop, however, failed to procure the release, and failed to return the note to plaintiff. The bank failed in September, 1925, and the note was still in the bank at that time.

The defendant, Galligan, claims to have purchased the note and trust deed in October, 1912, from the Home Savings & Trust Company, and has since claimed to be the owner and holder thereof. The defendant received no interest on the note after the year 1914. In the year 1913, defendant sent the note to Bishop at the bank, and never saw it again until after the bank had failed in 1925. After the year 1914, defendant made no effort to collect interest on the note nor to collect the principal, although it had been overdue since 1914 or 1917.

If defendant was the owner and holder of the note during all of those years, plaintiff, Schapiro, had no notice or knowledge thereof and was never so informed by defendant, plaintiff believing all that time that the bank was the owner.

Defendant claims that when he sent the note to the bank, it was borrowed from him, and he explained that he did nothing to collect on the note during the years mentioned, for the reason that his record book had become lost and was not found until after the failure of the bank. During this time defendant claims to have had the abstract of title and the trust deed, and that he recovered the note from the bank, through one Cronin, after the bank's failure.

There was evidence tending to show that defendant frequently, from 1912 to 1923, purchased notes from the bank, and when he had money, would give it to the bank to invest for him; that when the bank collected the princi-

pal, it would reinvest it for him when he told it to do so; that if the bank at any time collected the principal, it was all right if he got it; that the bank sometimes collected the principal and interest for him; that the bank had probably collected a dozen different notes and interest for him; that it continued to collect his notes and interest until it closed its doors. The record shows the following: "It is agreed that the notes and mortgages left with the bank or purchased from the bank by T. F. Galligan, that Miss Elsie Seeth would testify that the bank collected principal and interest for Mr. Galligan." Miss Seeth was one of two persons employed in the collection and discount department of the Home Savings & Trust Company.

Defendant testified that the bank, for the years 1923, 1924 and 1925, until it closed its doors, collected his notes and interest, although he did not let so much go through their hands during that period. But he said the notes he had up there, they still continued to collect.

Assuming that defendant became the owner of the note, as claimed by him, the only question we need determine here is one of agency. The evidence was ample to sustain the findings and judgment of the trial court. In fact, we do not perceive how the court could have held otherwise. It is most remarkable that for a period of about eleven years the defendant, being the owner of a note for $1,500 with interest payable quarterly, should make no inquiry concerning it, and should make no effort to collect either interest or principal, although several years past due when the bank failed.

During all that period of time defendant permitted Bishop, or the bank, to invest his money, taking from them notes and trust deeds, and also permitted them to collect not only the interest but in many cases the principal as well.

In the circumstances appearing here, there can be no question that Bishop or the bank was the agent of defendant for the collection of both principal and interest of the note in question.

It is strange indeed that a fifteen hundred dollar note is of so little moment that one to whom it is payable would overlook it entirely for so many years after its maturity, as it is claimed was done in the instant case. Had defendant used the most ordinary care, he could, and doubtless would, have received payment of the note from the bank any time after 1914 or 1917, and before the bank closed its doors in September, 1925.

The contention that when the plaintiff procured the new loan he made the bank his agent, cannot be sustained.

The relation of principal and agent could not, in the circumstances, be thus created. Plaintiff had been informed by the payee of the note, Bishop, in 1910, that he had transferred the note to the bank, and plaintiff had no knowledge that anyone other than the bank was the owner. When the plaintiff made the new loan, he was dealing directly with the bank through Bishop, borrowing money from the bank with which to pay to the bank the note in question.

The following cases sustain us in the views we have expressed: *Frost v. Fisher,* 13 Colo. App. 322, 339, 58 Pac. 872; *Wales v. Mower,* 44 Colo. 146, 96 Pac. 971; *Stark v. Stephens,* 76 Colo. 550, 233 Pac. 619.

The judgment of the trial court should be and is affirmed.

MR. JUSTICE DENISON, sitting for MR. CHIEF JUSTICE BURKE, MR. JUSTICE WHITFORD and MR. JUSTICE BUTLER, concur.