## No. 12,312.

### HAHN *v.* ALEXANDER ET AL.

(287 Pac. 855)

Decided April 28, 1930. Rehearing denied May 12, 1930.

Mr. CHALKEY A. WILSON, Messrs. COEN & SAUTER, for plaintiff in error.

354

Messrs. Anderson, Paynter & Epperson, for defendants in error.

*In Department.*

Mr. Justice Moore delivered the opinion of the court.

Parties here appear as in the lower court.

Plaintiff sought to recover judgment against defendants Bert L. Alexander and Leora M. Alexander, makers of a certain promissory note dated January 2, 1917, and due January 2, 1924, for the principal sum of $1,500; upon two interest coupons thereto attached, each for the sum of $90 due respectively, January 2, 1923, and January 2, 1924, and to foreclose a certain deed of trust upon land in Washington county, Colorado, given as security therefor.

Defendants Bert L. and Leora M. Alexander and the Farmers State Bank of Brush, Colorado, alleging that the notes had been paid, cross-complained for their cancellation. The court entered findings and decree in favor of defendants, to review which this writ is prosecuted.

The note and interest coupons were all made payable to the Interstate Securities Company at its office at Minneapolis, Minnesota. On March 8, 1917, an assignment thereof was made to John Hahn, who remained the owner thereof until his death, May, 1920; thereafter letters of administration upon his estate were issued to one E. F. Russell who, on November 29, 1920, assigned said notes and deed of trust to Margaret Hahn, who on August 8, 1924, assigned the same to the plaintiff herein. The principal and interest were paid to the Interstate Securities Company at its office in Minneapolis. The last two interest payments for 1923 and 1924 and the principal were not remitted by the company to the plaintiff. In August, 1924, the company went into the hands of a receiver. Neither the Alexanders nor the bank knew of any of the

assignments. The record sheet of the Interstate Securities Company shows that the interest coupons covering the years 1918 and 1920 were received by the company prior to the time that payment was made thereon. Correspondence between the company and E. F. Russell, representing the Hahns, reveals that Jacob Hahn owned another loan which he had purchased from the Interstate Securities Company and expressly authorized it to represent him in its collection. The Interstate Securities Company was in the general farm and city loan business and its general custom was to collect for its customers principal and interest of all loans negotiated by it. In the spring of 1923, Bert L. Alexander received a letter from E. F. Russell containing an inquiry as to whether he had paid the interest due January 1, 1922, to which he replied that it had been sent to the Interstate Securities Company. This letter contained no directions as to the making of further payments to the Interstate Securities Company. This, in brief, was the defendants' evidence. The plaintiff offered no proof that the Interstate Securities Company was not acting as her agent or the agent of the respective assignors.

The sole question here presented is one of agency. If the Interstate Securities Company, under the evidence, can be held to be the agent of the plaintiff either expressly, by implication or estoppel, the defendants should prevail, otherwise not.

Notwithstanding the erudite argument of counsel to the contrary, we believe that this evidence was sufficient to prove, at least, prima facie, that the Interstate Securities Company was the agent of plaintiff by implication and that the equities are undoubtedly with the defendants.

Express agency to collect the Hanson loan; the delivery to the Interstate Securities Company of two interest coupons before maturity and the fact that no demand was made upon the Alexanders that they pay the principal and interest of the note to the holder thereof, show that

the plaintiff was relying upon the Interstate Securities Company as her agent to collect the same.

Plaintiff insists that the Interstate Securities Company was the agent of the defendant and in support thereof cites *Stuart & Co. v. Asher,* 15 Colo. App. 403, 62 Pac. 1051; *Cowing v. Cloud,* 16 Colo. App. 326, 65 Pac. 417, and *Campbell v. Equitable Securities Co.,* 17 Colo. App. 417, 68 Pac. 788. In each of these cases the evidence wholly fails to show that the holder of the note authorized his transferor to act as his agent in its collection.

In the Asher case, supra, Asher and his wife executed a note to the Globe Investment Company which was sold by it to John Stuart & Co., an English corporation, the Globe company guaranteeing its payment. The interest coupons were forwarded by the English company to Kidder, Peabody & Co. at Boston for collection and were paid to the latter company by the Globe Investment Company. The court states at page 407: ''None of the coupons were ever delivered to the Globe company for collection, or surrendered to that company before payment, * * * there never was any arrangement whatever between John Stuart & Company and the Globe Investment Company for the collection of either interest or principal of this loan; * * * So far as this record discloses, the Globe company, in collecting the coupons, did not act as agent at all. It was its own coupons which it collected, and in making the collections it acted solely in its own behalf.'' Under these circumstances, the court held that the Ashers could not claim that payments to the Globe Investment Company were payments received by it as agents for the note holder.

In *Cowing v. Cloud, supra,* Cloud executed his note to the Colorado Securities Company, payable at the office of the Importers' & Traders' National Bank in New York City or Denver. The Securities Company sold the note to Cowing, a resident of New York, who presented the coupons at the office of the Importers' & Traders' National Bank of New York City. Cloud alleged payment

of the note and interest to the Colorado Securities Company as agent for the plaintiff. In holding that the securities company was the agent of Cloud and not Cowing, the court states at page 332: "The plaintiff, after his purchase of the note, had nothing to do with the securities company. He went to the agency designated by the plaintiff, where he had the right to suppose that the money, if not paid directly to himself, would be found; and an assumption that the securities company was his agent, or that the bank was his agent, or that he was responsible for anything that either of them did, is purely gratuitous."

The facts in the case of *Campbell v. Equitable Securities Co., supra,* are similar to those in the Cowing v. Cloud case. In none of these cases was there any showing that the holder of the negotiable paper either expressly or impliedly constituted his transferor as his agent to collect the same.

In support of their position that the evidence discloses that the Interstate Securities Company was the agent of the plaintiff, defendants cite *Frost v. Fisher,* 13 Colo. App. 322, 58 Pac. 872; *Stark v. Stephens,* 76 Colo. 550, 233 Pac. 619 and *Galligan v. Schapiro,* 82 Colo. 423, 260 Pac. 519.

In the Frost case, supra, the Fishers executed their note payable to the order of the Globe Investment Company at its office at Boston, Massachusetts. The Globe company assigned the note to Chaney without the knowledge of the Fishers, who dealt with the Globe Investment Company as the owner and paid to it the amount of principal and interest. The evidence discloses that it was the custom of the Globe company to send to each loan holder a notification and request, thirty days before the maturity of the note or interest coupons, requesting a delivery of the coupon then becoming due to be delivered to the holder upon receipt of the interest payment and that the notes were sold on the general understanding that the Globe Investment Company was to make collections with-

out charges to the purchaser. The court held under these circumstances that the Globe company was the agent of the holder. The court said at page 340: "Whether the company had authority in fact to act for Mr. Chaney was within his knowledge. While, because the sale to Chaney was one of a multitude of similar transactions, the officers of the company had forgotten its details, and could, therefore, testify only as to general facts, he knew whether or not he had an agreement with it whereby it was to take charge of the loan as his agent, and, by speaking, he could speedily have settled the question. The agency was averred in the complaint, and denied in the answer. He knew that the question was directly involved in the pleadings, and was the principal issue in the case, so that the evidence introduced was no surprise to him; when proof was made from which the theory of agency was a legitimate deduction, it was incumbent upon him, if he denied that the company proceeded by his authority, to give the court the benefit of the actual facts; and, under the circumstances of the case, as the record discloses them, his silence is corroborative of the conclusion which the evidence given justified, that the company was, in fact, his duly authorized agent."

In *Stark v. Stephens, supra,* it was held that evidence of a general course of dealing, showing that one acting as agent for another in collecting money on notes was sufficient to prove an agency existing in connection with the transaction under consideration.

In *Galligan v. Schapiro, supra,* in 1908 Bland executed his promissory note payable to Frank L. Bishop at his office in Denver and executed a trust deed securing the same. Schapiro purchased the real estate covered by the trust deed and agreed to pay the note. Bishop transferred the note to the Home Savings & Trust Company and thereafter Schapiro paid the interest on the note quarterly to Bishop and the bank at Bishop's office in the bank. Galligan claimed to be the owner of the note, having purchased the note in 1912 and received no interest

thereon after 1914. Schapiro had no notice or knowledge of defendant's claiming to be the owner of the note and dealt solely with Bishop and the bank. Evidence was introduced disclosing that defendant had purchased other notes from the bank and had authorized it to collect the same. In determining that the bank was Galligan's agent, the court states at page 426:

"Assuming that defendant became the owner of the note, as claimed by him, the only question we need determine here is one of agency. The evidence was ample to sustain the findings and judgment of the trial court. In fact, we do not perceive how the court could have held otherwise. It is most remarkable that for a period of about eleven years the defendant, being the owner of a note for $1,500 with interest payable quarterly, should make no inquiry concerning it, and should make no effort to collect either interest or principal, although several years past due when the bank failed.

"During all that period of time defendant permitted Bishop, or the bank, to invest his money, taking from them notes and trust deeds, and also permitted them to collect not only the interest but in many cases the principal as well.

"In the circumstances appearing here, there can be no question that Bishop or the bank was the agent of defendant for the collection of both principal and interest of the note in question."

Applying the law as announced in the foregoing cases to the instant case, we must conclude that the Interstate Securities Company was the agent of the plaintiff and that the trial court was not in error in so finding. Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE BUTLER and MR. JUSTICE BURKE concur.