## No. 12,385.

COLORADO NATIONAL BANK OF DENVER *v.* REHBEIN ET AL.

(298 Pac. 952)

Decided March 23, 1931.   Rehearing denied May 4, 1931.

Mr. CHARLES R. ENOS, Mr. HAROLD H. HEALY, Mr. THEO-DORE A. CHISHOLM, for plaintiff in error.

Mr. WM. E. HUTTON, Mr. J. P. NORDLUND, Mr. JOHN W. HELBIG, Mr. D. W. STRICKLAND, Mr. OLIVER W. TOLL, Mr. THOMAS H. GIBSON, Mr. MILNOR E. GLEAVES, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THE Colorado National Bank sued to foreclose a deed of trust to the public trustee of the City and County of Denver executed by Marie Rehbein and given as security for the payment of her note for $3,000 payable to the order of Louis A. Siener three years after date; to cancel a release of said deed by the public trustee and to recover personal judgments against Marie Rehbein, Fred A. Giggal and Edith M. Giggal for the principal of said note and interest at the rate of 7 per cent from December 8, 1927. To review a judgment for defendants, Marie Rehbein, Fred A. Giggal, Edith M. Giggal and the Capitol Life Insurance Company, this writ is prosecuted.

On December 28, 1923, Marie Rehbein executed a deed of trust securing her note for $3,000 payable to the order of Louis A. Siener. On the same day, the Colorado National Bank took said note and deed of trust as collateral security to Siener's note for $3,000 to the bank. Mrs. Rehbein at no time knew that the bank held her note and deed of trust. Siener's note was renewed from time to time and judgment was entered herein against him equivalent to the balance due thereon and interest in the sum

of $2,771. About April 7, 1924, Mrs. Rehbein conveyed the property here involved, subject to said incumbrance, to Fred A. Giggal and Edith M. Giggal who thereafter, with the bank's knowledge and acquiescence, made all interest payments to Siener personally, and required him to endorse said payments upon a note which was represented by Siener to be, and which they thought was, the original note but which in fact was a forgery. Prior to the maturity of the Rehbein note, the Giggals arranged to borrow from the defendant, the Capitol Life Insurance Company, $3,000, to be secured by a first mortgage, for the purpose of taking up the Rehbein note. On December 28, 1926, the maturity date of the Rehbein note, the Giggals and Siener appeared at the office of the Capitol Life Insurance Company to close the loan transaction. There Siener produced, cancelled and surrendered the forged note, together with a regular form of release of the deed of trust, a request for the execution of which he had signed as the holder of the deed of trust and note. The Giggals executed their mortgage to the insurance company and the company's check for $3,000, by them endorsed to the order of Siener, was handed to Siener. Immediately thereafter and on the same day the release deed and new first mortgage were filed for record.

The Rehbein note as originally executed and delivered by her to Siener contained no endorsements thereon. After it had been delivered to the Colorado National Bank as collateral security, with the knowledge and consent of the bank, but without the knowledge or consent of the maker, Mrs. Rehbein, or the Giggals, Siener endorsed thereon immediately under the notation of interest payment dated June 28, 1924, the following, ''The time for payment of this note is herewith extended to Dec. 28, 1929.'' Thirteen succeeding interest payments are endorsed on the other end of said note, the last being December 28, 1927, one year after its original maturity.

The district court found and decreed that the note held by the bank was genuine and the other a forgery; that

the bank, for value in good faith and before maturity, held the genuine note as collateral security to Siener's indebtedness to it; that Siener held himself out to defendants as the owner and holder of said deed of trust free from any lien thereon and pledge thereof and received all installments of interest and the principal as the owner and holder thereof; that the bank had notice that Siener was representing and holding himself out as the owner and holder of said note with authority to collect principal and interest thereof and was receiving the interest accruing thereon and dealing with the maker thereof and the parties liable to pay the same as the owner and holder of said note, or as having authority to collect it, and that bank acquiesced in and ratified such conduct; that plaintiff was guilty of negligence in failing to notify the maker of said note or the persons liable to pay the same, of plaintiff's interest in said note and in accepting without verification Siener's assertion that the maturity of said note had been extended; that none of defendants knew that said note had been pledged with the bank; that none of defendants consented or ratified the purported extension of the maturity of the note; that said extension constituted a material alteration in the note, was fraudulently made by Siener with the knowledge and consent of the bank, and rendered it void as against defendants; that the payments of interest and principal of said note made to Siener constitute a full defense upon said note and the debt represented thereby as against Siener and bank; that the bank is estopped from denying Siener's full ownership of said note free from pledge thereof or lien thereon and is estopped to deny full authority of Siener to deal with said note as his own property free from any lien or pledge and to accept payments thereof and to deny Siener's authority to request the public trustee to release said deed of trust.

The court decreed that bank was not entitled to any judgment against defendants Rehbein, Giggal and Giggal and the Capitol Life Insurance Company; that the

release of said deed of trust is valid and bank is not entitled to cancel same; that said note and deed of trust were fully paid and discharged as to Rehbein, Giggals and the Capitol Life Insurance Company; that plaintiff bank is entitled to judgment against Siener in the sum of $2,771 (the balance of principal and interest due on Siener's indebtedness to bank) and quieted the title to the property involved in Fred A. Giggal and Edith M. Giggal, subject to the mortgage held by the Capitol Life Insurance Company.

Numerous questions presented by the assignments of error have necessitated an exhaustive research by the court, but the determination of one is conclusive of the rights of the parties and therefore the others need not be discussed.

Did payment to Siener constitute a defense against bank? This question involves the determination of whether Siener was bank's agent expressly, impliedly or by estoppel and whether bank is estopped to deny Siener's ownership.

Joseph R. Lorett, who handled the transaction of the bank, testified:

That the bank had no dealings with either the Rehbeins or Giggals; that it would not be presumptuous enough to question the integrity of the business practice of a third party, but might if it felt that it affected the bank in some way.

"Q. Is it the bank's custom to let the pledgor collect the interest on the collateral? A. It is almost a universal practice.

"Q. And make extensions of that sort? A. Absolutely.

"Q. And when the pledgor comes in as to a piece of collateral and says, 'It has been paid, here is your money,' the bank takes it? A. Sure." It is the almost universal practice not to notify the makers of collateral that their paper has been pledged with the bank. Prac-

tically the same now as it was at the time of the Siener transaction.

On cross-examination the witness testified that he knew the handwriting of Mr. Siener and would say that the endorsement of interest and extension on note was in the handwriting of Mr. Siener and that it is the practice of the bank to let the pledgor collect the interest on collateral.

"Q. And that it is the practice of the bank to let the pledgor arrange for extensions? A. Yes, sir.

"Q. And to collect the principal? A. Yes.

"Q. That is, you treat the pledgor as in effect the owner of the note, the holder of the note, as far as the collection of interest, principal or the making of extensions is concerned? A. Yes, sir."

This testimony indubitably establishes that bank permitted Siener to represent himself as the ostensible owner and holder of the Rehbein note and deed of trust; to collect interest thereon (14 such payments were endorsed by Siener upon said note, four of which were dated subsequent to its original maturity, December 28, 1926); to endorse on said note an extension of its maturity to December 28, 1929. It may be that the record is insufficient to prove an express agency but unquestionably it does establish agency by implication. *Wales v. Mower,* 44 Colo. 146, 96 Pac. 971; *Stark v. Stephens,* 76 Colo. 550, 233 Pac. 619; *Frost v. Fisher,* 13 Colo. App. 322, 58 Pac. 872; *Hahn v. Alexander,* 87 Colo. 353, 287 Pac. 855; *Galligan v. Schapiro,* 82 Colo. 423, 260 Pac. 519; *Gioso v. Di Bell,* 88 Colo. 287, 295 Pac. 919. If Siener had disclosed this agency, the Giggals would have required the production and cancellation of the original note. In order to avoid such disclosure and its consequences, Siener forged a similar note and caused the Giggals to believe it to be genuine and to make payment thereof. Payment to Siener, because of his ostensible ownership, coupled with his undisclosed agency to collect principal and interest of said note, operates as a

complete defense against bank's claim. Counsel for bank urge that assuming Siener's agency, he ceased to continue as such when he received payments by means of a forged instrument. The cases cited in support of this contention are not in point. Therein it is held that a criminal act by a known agent terminates his agency. In this case, Siener was an undisclosed agent. If the Giggals had known that he was an agent of the bank, a different question would have been presented. However, in view of the extreme caution evidenced by the Giggals, if the facts had been disclosed, payment would have been made to the bank directly and not through Siener.

But, assuming the correctness of counsel's argument, still another cogent reason prevents recovery by the bank. The record supports the ruling of the lower court that bank is estopped to deny Siener's ownership. Such being the case, it is immaterial whether Siener received payment from the Giggals as the result of his fraudulent acts. Payment to an owner entitled thereto because of his ownership is not defeated because induced through fraudulent representations. It is true, in the first instance, the bank was under no duty to notify the maker of said note that it held it as collateral security, but its subsequent conduct created a duty to speak. Because of its failure to act after permitting Siener to hold himself out as the ostensible owner and holder of said note, to collect interest and to endorse thereon an extension of the maturity thereof without investigating his authority to make the same, the Giggals were led into a false position—to believe that Siener was the owner of said instrument and to pay the same. In these circumstances, the equitable rule applies that where one of two innocent parties must suffer he whose inaction caused the result complained of must lose.

In *Gioso v. Di Bell, supra*, involving the question of payments to an assumed agent of an undisclosed principal who appropriated the money, the last pronouncement of this rule is as follows: "As a simple matter of jus-

tice the judgment would seem right, on the general principle that, when one of two innocent persons must suffer from the acts of a third he must suffer who put it in the power of the wrongdoer to inflict the injury. Plaintiffs dealt with Fleming and made him their agent. A word from them to their friends that they owned the paper would doubtless have prevented the loss. They paid little attention to the conduct of their agent or their business.''

This statement is equally applicable in the instant case. The bank held the note as collateral security from its date until 14 months after its original maturity and at all times throughout this entire period knew of and acquiesced in Siener's ostensible ownership. ''A word'' from the bank to Rehbein or the Giggals ''would doubtless have prevented the loss.''

See also 8 C. J. 599; Joyce, Defenses to Commercial Paper (2d Ed.), §978; *Fowle v. Outcalt*, 64 Kan. 352, 67 Pac. 889; *Pennypacker v. Latimer*, 10 Ida. 625, 81 Pac. 55; *Nielson v. Westrom*, 46 Ida. 686, 270 Pac. 1054; *City Savings & Trust Co. v. Peck*, 92 Vt. 310, 103 Atl. 1020.

Judgment affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD dissent.